COMMONWEALTH *vs.* THOMAS DAMIANO.

Bristol. December 6, 1995. - February 7, 1996.

Present: LIACOS, C.J., WILKINS, O'CONNOR, GREANEY, & FRIED, JJ.

*Constitutional Law,* Admissions and confessions. *Evidence,* Admissions and confessions. *Practice, Criminal,* Motion to suppress.

In a murder case, a Superior Court judge correctly ruled that the police had failed to give the defendant Miranda warnings in circumstances in which Miranda warnings were required and that incriminating statements the defendant made at that time had to be suppressed; further, the judge correctly ruled that later statements the defendant made, after he had received Miranda warnings, were not free of the tainted earlier interrogation and also must be suppressed. [12-13]

INDICTMENTS found and returned in the Superior Court Department on October 14, 1993.

A pretrial motion to suppress evidence was heard by *Richard J. Chin,* J.

An application for leave to file an interlocutory appeal was allowed by *Lynch,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*Elspeth Cypher,* Assistant District Attorney, for the Commonwealth.

*John Higgins & Andrew S.A. Levine* for the defendant.

WILKINS, J. The Commonwealth appeals, pursuant to leave by a single justice of this court, from that portion of an order that allowed the suppression of certain statements that the defendant made to the police and of evidence derived from those statements. The defendant has been indicted for murder and other crimes allegedly arising from events that occurred in Fall River on October 1, 1993.

A Superior Court judge ruled that (1) the police failed to give the defendant Miranda warnings in circumstances in which Miranda warnings were required, (2) incriminating statements that the defendant made at that time had to be

suppressed, and (3) later statements that the defendant made, after he had received Miranda warnings, were not free of the tainted earlier interrogation. The propriety of the judge's rulings depends on whether the defendant should have received Miranda warnings when a State trooper interrogated him in a police cruiser on Route 195. We agree with the judge that Miranda warnings should have been given before the questioning began and, therefore, affirm that portion of the order that is the subject of the Commonwealth's appeal.

About 12:30 A.M. on October 1, a State trooper was sent to a location on Route 195 in Fall River, where a man was lying in the center travel lane. The man, later identified as a Providence, Rhode Island, taxicab driver, was dead. The trooper remained at the scene investigating the incident. Bruce Tavares, a Fall River police officer, briefly assisted in directing traffic at the scene and then returned to his regular duties. Shortly thereafter, Tavares, sitting in a cruiser in a Store 24 parking lot and talking with police officers in another cruiser, saw the defendant, barefoot and wearing shorts, scaling a chain link fence. It was a cool night.

Tavares, on foot, approached the defendant who, unsteady on his feet, ran by Tavares. The defendant yelled that he wanted the Wareham police and that the Fall River police officers were not "real cops." The defendant ran into the middle of a main thoroughfare, and waving his arms, yelled, "Don't kill me." He also stated that he had been robbed and that a man had been seriously hurt on the highway.

After a brief struggle, the defendant was taken into custody, handcuffed, and placed in Tavares's cruiser. The defendant again screamed that he had been robbed. He said that he wanted to speak to the State police and that Tavares was involved in a plot to kill him. Tavares did not question the defendant, and the motion judge did not suppress the defendant's statements to Officer Tavares. Tavares took the defendant to the accident scene and explained to the State trooper the circumstances in which the defendant had been taken into custody. The State trooper approached the Fall River cruiser. The defendant asked the trooper not to kill him. The defendant then agreed to talk with the trooper. The trooper, who did not inform the defendant of his rights, put handcuffs on the defendant, placed him in the back of his cruiser, and then recorded their conversation, which we summarize from the judge's findings.

The defendant, who was still handcuffed, said that he had come to Providence by train where his brother was supposed to have met him, but did not. Outside the station he saw four men who he believed were going to rob him. He called his brother in Wareham who told him to speak with security people at the station, which he did. The defendant found a taxicab driver who would take him to Wareham. On the way, the driver made furtive gestures and tried to hit the "Jersey barriers." The driver jumped out of the cab, and the defendant drove the cab into Fall River. When asked why he had told Officer Tavares that he had been robbed, the defendant said that he had to tell the officers something because, "[T]hey're in on it too." The trooper then asked the defendant if he could identify the cab driver. The defendant identified the dead man in the highway as the cab driver. At this point, the trooper advised the defendant of his Miranda rights.

The defendant made further statements to the trooper, some of which were incriminating. The trooper took the defendant to the Fall River police station where, after he received Miranda warnings again, he made additional statements. The judge found that all the police questioning was continuous. The interview ended when the defendant asked to speak with a lawyer. Based on what the defendant had told them, the police found his duffel bag and suitcase in a school yard near where the cab was found.

After a hearing at which the State trooper, Tavares, and others testified, the motion judge suppressed all statements that the defendant made to the State trooper in his cruiser and at the Fall River police station. The motion judge did not reach the question whether the defendant's statements were voluntary. He ruled that the police questioning occurred after the defendant had been taken into custody and that Miranda warnings were required.

1. The Commonwealth contends that the police questioning of the defendant before the police gave him Miranda warnings occurred in circumstances in which Miranda warnings were not required. Hence, the Commonwealth argues, the defendant's pre-Miranda statements were not tainted and his subsequent statements (and evidence discovered because of those statements) need not be suppressed as fruits of an unlawful interrogation.

The Commonwealth asserts that the police did not initially

arrest the defendant but rather took him into protective custody. That may well be true, although the police did not follow the procedures set forth in G. L. c. 111B, § 8 (1994 ed.), the protective custody statute. The question whether the defendant was in protective custody is not controlling. The crucial question is whether, considering all the circumstances, a reasonable person in the defendant's position would have believed that he was in custody. *Berkemer* v. *McCarty*, 468 U.S. 420, 442 (1984). *Commonwealth* v. *A Juvenile*, 402 Mass. 275, 277 (1988). Thus, if the defendant reasonably believed that he was not free to leave, the interrogation occurred while the defendant was in custody, and Miranda warnings were required. *Stansbury* v. *California*, 114 S. Ct. 1526, 1528-1529 (1994). The fact that the trooper's initial questioning was not hostile and was undertaken simply to find out what the defendant knew about what had happened does not excuse the failure to give Miranda warnings. *Id.* at 1528. The defendant was handcuffed in the back seat of a police cruiser in the middle of the night on a multi-lane State highway. As a matter of law no reasonable person in that situation would believe that he or she was free to leave.

2. The Commonwealth argues that the defendant's statements made after he received Miranda warnings should be admitted because (a) there had been a sufficient break in the stream of events to insulate post-Miranda statements from the pre-warnings interrogation and (b) the pre-Miranda remarks did not incriminate the defendant (i.e., the cat was not out of the bag). See *Commonwealth* v. *Osachuk*, 418 Mass. 229, 235 (1994); *Commonwealth* v. *Smith*, 412 Mass. 823, 835 (1992).

The facts do not support this contention. The judge found that the questioning was continuous and ruled correctly that the unlawfully obtained statements were incriminating because they placed the defendant at the scene of the crime and presented an implausible explanation for the victim's death.

3. The Commonwealth briefly asserts that the police would have inevitably found the defendant's duffel bag and suitcase and hence that evidence was not the product of the unlawful questioning. The judge concluded that the police located these items based on statements unlawfully obtained from the defendant and that there was no basis for concluding that their

discovery by the police was inevitable. The Commonwealth gives no explanation, based on facts and reason, why the judge's conclusions were wrong.

4. That portion of the order of February 23, 1995, suppressing evidence is affirmed.

*So ordered.*