## COMMONWEALTH *vs.* GERALD JONES.

No. 94-P-1992.

Suffolk. February 4, 1997. - March 27, 1997.

Present: BROWN, KAPLAN, & PERRETTA, JJ.

*Practice, Criminal,* Assistance of counsel, Argument by prosecutor. *Evidence,* Chain of custody, Judicial discretion, Identification.

A criminal defendant did not demonstrate that his trial attorney had provided ineffective assistance of counsel by his failure to have sought the exclusion of evidence that was properly admissible [380-381]; or his failure to contest the admissibility of the defendant's statements to police officers while in custody, where there was no possibility that the statements made any difference in the outcome of the trial [381-383]; or the attorney's failure to object to the prosecutor's argument, which was not improper [384-385].

At the trial of a criminal complaint, there was no error in the judge's exclusion of proffered evidence that the judge determined was not material to the issues and was not otherwise admissible. [385-386]

COMPLAINT received and sworn to in the Boston Municipal Court Department on March 15, 1993.

The case was tried before *Herbert H. Hershfang,* J.

*Jon R. Maddox* for the defendant.

*Paul M. Treseler,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted by a Boston Municipal Court jury of six of larceny from a person, G. L. c. 266, § 25, and assault and battery, G. L. c. 265, § 13A (two counts). On appeal he alleges that (1) he was deprived of effective representation at trial and (2) the trial judge erred in excluding the testimony of a defense witness. We affirm.

Based on the evidence adduced at trial, the jury would have been entitled to find the following facts. The victims, two women in their twenties, were walking along the sidewalk in the theater district of Boston. A snowstorm was underway,

and several inches of snow had accumulated on the ground. Although it was approximately 4:00 P.M., as a result of the storm the streets were largely deserted.

As the victims walked, a man approached them from behind. He briefly grappled with the first woman, ultimately knocking her to the ground. He then advanced to the second woman and struggled with her. After knocking her down as well, the man grabbed the second woman's purse and fled. During the attack, both victims had a good opportunity to view the defendant's uncovered face.

After recovering from the assault, the victims located a police officer, James O'Malley, and told him what had happened. O'Malley instructed the victims to get into his cruiser, and the group set off in search of the robber. After driving around the area for about fifteen minutes, the victims spotted a man, later identified as the defendant, being chased down the street. At this point, the defendant was about one hundred yards from the spot where the attacks had occurred. Both victims immediately identified the defendant as their attacker.

Without any summons from Officer O'Malley, the defendant approached the cruiser and explained that he was being chased. The officer then stepped outside and told the defendant that the women had been robbed and that they had identified him as the culprit. The defendant denied the charges, but stated that he had seen the attack.

The officer then asked the defendant to sit in the back of the cruiser and held the door open as he entered. More conversation followed, with the victims reiterating their accusations and the defendant denying them. O'Malley asked the defendant various questions, including whether he recognized one of the victims. At one point, the defendant attempted to leave the cruiser, but the officer asked him to get back inside and shut the door. The door was designed so that it could not be opened from the inside.

While still protesting his innocence, the defendant stated that he knew where the victim's purse had been discarded and could lead O'Malley there. The officer drove to the place described by the defendant, where, as predicted, the stolen purse was found. At that point, O'Malley placed the defendant under arrest.

Other officers were summoned, and the defendant was transported to the station house for booking. At the station,

police recovered thirty-three dollars — the approximate amount contained in the second victim's purse at the time of the robbery — which the defendant had "balled up" and concealed in his mouth.

1. *Alleged ineffective representation.* The defendant has identified several errors and omissions on the part of his trial counsel which, he claims, deprived him of a fair trial. Specifically, the defendant faults his former advocate for (1) failing to seek to suppress the defendant's statements made while in the back of the cruiser, (2) failing to object to the admission of the thirty-three dollars recovered from the defendant's mouth, on the ground that the chain of custody was not clearly established, and (3) failing to object to certain aspects of the prosecutor's closing argument. We consider each of these claims in turn.

In considering a claim of ineffective assistance of counsel we look to the familiar teaching of *Commonwealth* v. *Saferian*, 366 Mass. 89, 96-97 (1974). See *Commonwealth* v. *Rondeau*, 378 Mass. 408, 412-413 (1979). Consonant with these principles, "[t]actical judgments do not lead to a finding of ineffective assistance of counsel unless they are 'manifestly unreasonable.' " *Commonwealth* v. *McMaster*, 21 Mass. App. Ct. 722, 734 (1986), quoting from *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978).

a. *Failure to contest admissibility of the thirty-three dollars.* The money was recovered from the defendant's mouth during an inventory search conducted at the time of booking.[1] Although the defendant does not challenge the propriety of the search, he contends that the money was inadmissible because it had been stored in a police officer's personal locker pending trial, rendering the "chain of custody" uncertain. His attorney, the defendant argues, was remiss in failing to present this argument at trial.

Alleged weaknesses in the chain of custody of physical evi-

[1]The defendant has not suggested — nor would he have any basis for doing so — that the inventory search during which the thirty-three dollars was discovered was tainted by the unlawful interrogation, i.e., the "fruit of the poisonous tree." See discussion *infra*. The eyewitness identifications, among other things, provided a sufficient independent basis on which to establish probable cause to arrest and search. The question whether an inventory search goes to body cavities is not before us. See in this regard *Bell* v. *Wolfish*, 441 U.S. 520, 558-560 (1979).

dence go to the weight of the evidence, not its admissibility. *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 230 (1992). *Commonwealth* v. *Colon*, 33 Mass. App. Ct. 304, 309 (1992). Here, the jury were fully apprised of the provenance of the contested evidence, facts they were free to consider in assessing its inculpatory weight. The judge, however, was not required to exclude the money solely because of the manner in which it had been preserved. As any objection to the admission of the evidence would likely have been unavailing, defense counsel cannot be faulted for failing to proffer one. Failing to "attempt to demonstrate the undemonstrable" does not constitute a deprivation of effective assistance of counsel. See *Commonwealth* v. *Bertrand*, 385 Mass. 356, 368 & n.8 (1982). See also *Commonwealth* v. *Servidori*, 6 Mass. App. Ct. 969, 970 (1979); *Commonwealth* v. *DiPietro*, 35 Mass. App. Ct. 638, 643 (1993).

b. *Failure to contest admissibility of statements.* Next, the defendant asserts that his attorney was remiss in failing to contest the admissibility of various statements that he made while in the rear of the cruiser just before his arrest, as well as his offer to lead O'Malley to the place where the victim's purse had been abandoned. The gist of the defendant's argument is that once he had been identified by the two victims and placed in the rear of the patrol car, O'Malley was required to provide the warnings prescribed by *Miranda* v. *Arizona*, 384 U.S. 436, 444 (1966), before questioning him. As a result, the defendant asserts, all of his statements concerning his knowledge of the circumstances of the attack on the victims and the whereabouts of the victim's purse were illegally obtained and, thus, subject to exclusion. For its part, the Commonwealth essentially contends that Miranda warnings were not necessary here because the defendant was not in custody at the time that he made the statements in question.

Both parties agree that Miranda warnings are mandatory only for "custodial interrogations." See *Miranda* v. *Arizona, supra*; *Commonwealth* v. *Haas*, 373 Mass. 545, 551 (1977), *S.C.*, 398 Mass. 806 (1986). "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* v. *Arizona, supra*. The four factors to be considered in determin-

ing whether an individual's freedom of action has been sufficiently constrained so as to require Miranda warnings have been fully elaborated in *Commonwealth* v. *Bryant*, 390 Mass. 729, 737 (1984).[2]

As to the first of the *Bryant* factors, the interview here was conducted while the defendant was locked in the rear seat of a police patrol car. He attempted to leave the car once and was instructed by Officer O'Malley not to do so. Adding to the hostility of the environment in which the questioning took place was the fact that the defendant was directly confronted by his two accusers.

As to the second factor, the Commonwealth concedes — as it must — that the investigation had focused on the defendant at the time of the interview. Indeed, on the strength of the accusations of the two eyewitnesses, O'Malley had ample probable cause to make an arrest at the moment the defendant walked up to the police car. Compare *Commonwealth* v. *Sim*, 39 Mass. App. Ct. 212, 219, 220-221 & n.9 (1995).

As to the nature of the interrogation — the third factor — matters are a little hazy. O'Malley's questioning was not aggressive, and the defendant appears to have, to some extent, wanted to talk to the officer, at least initially. Compare *Commonwealth* v. *Jung*, 420 Mass. 675, 688-689 (1995). However, the defendant's glibness no doubt was inspired largely by the victims' repeated and emphatic accusations and his desire to avoid arrest. Although O'Malley himself did not need to exert much pressure to elicit information from the defendant, the officer had the benefit of the tense atmosphere within the patrol car. In such circumstances, even mild questions have the capacity to take on a sharp edge.

Finally, the interview terminated with the defendant's arrest. As noted, during the questioning, the defendant attempted to leave but was prevented from doing so. Of all of

---

[2]Those factors are "(1) the place of the interrogation; (2) whether the investigation has begun to focus on the suspect, including whether there is probable cause to arrest the suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the suspect; and (4) whether, at the time the incriminating statement was made, the suspect was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with the defendant's arrest." *Id.*

the relevant factors, this is perhaps the most revealing of the true status of the interrogation here.

On the basis of the considerations set out in *Commonwealth* v. *Bryant, supra,* we conclude that the defendant was in custody at the time he was questioned. "[W]hen a defendant [is] in custody, police interrogation must be preceded by *Miranda* warnings." *Breese* v. *Commonwealth,* 415 Mass. 249, 255 (1993), citing *Commonwealth* v. *Haas,* 373 Mass. at 551. O'Malley's failure to provide Miranda warnings, therefore, renders the defendant's statements inadmissible. Further, in view of their inculpatory character, we can perceive no sound basis for defense counsel's failure to attempt to exclude them.

This, however, does not conclude our inquiry. In order to be entitled to relief on the basis of attorney error, a defendant must show that his case was prejudiced in a material way — that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977). Compare *Commonwealth* v. *McGann,* 20 Mass. App. Ct. 59, 61-62 (1985), with *Commonwealth* v. *Egardo, ante* 41, 44 (1997), and cases cited. Here, however, the Commonwealth's case was overwhelming without any of the evidence derived from the inadmissible statements. The defendant was first seen by police running along a deserted street about fifteen minutes after the attack on the two victims and a few hundred yards from where it had occurred. He was immediately identified by both victims, who stated that they were positive that he was the attacker. Both had had ample opportunity to observe the defendant — the attack occurred during the daytime, and the defendant's head was uncovered. Finally, during an inventory search of the defendant, thirty-three dollars was found hidden in his mouth — the approximate amount stolen from one of the victims.

In these circumstances, there is no possibility that the defendant's statements — including those relating to the location of the victim's purse (which were by no means trifling) — made a difference in the outcome of the defendant's trial. The Commonwealth's other evidence was simply too powerful. As a result, the defendant is not entitled to any relief. See *Commonwealth* v. *Woods,* 419 Mass. 366, 372 (1995) (admission of statements in violation of Miranda principles did not create a substantial risk of a miscarriage of justice requiring retrial where Commonwealth's other evidence sufficiently strong to assure conviction).

c. *Failure to object to closing argument.* The defendant's final allegation of attorney error concerns the Commonwealth's closing, during which the prosecutor stated: "How do you explain Mr. Jones coming out of the blue? He's running up to the police car. Well, the witnesses told you that they called attention to themselves that day, they were frightened and screaming, they wanted people to help them. I suggest to you that you may infer from the testimony that you heard that somebody was chasing Mr. Jones . . . because they had information as to that fact [i.e., that the defendant had mugged the two witnesses fifteen or twenty minutes earlier]. And you heard the officer say, when he was questioned by counsel, about this white man that was, was chasing him. Wasn't chasing him to assault him, I don't think you can infer that. *I think he was chasing him because his words are, that's him.*" (Emphasis supplied.)

Specifically, the defendant argues that the prosecutor's use of the first person voice in the last sentence of the quoted passage constituted an assertion of personal opinion on the prosecutor's part, rather than simply a suggestion as to how the evidence might be interpreted. The defendant asserts that his representation was fatally flawed because his attorney was remiss in failing to object. We disagree.

Admittedly, the prosecutor's use of the phrase "I think" during his closing was regrettable. However, in this context, this was not a significant misstep. See *Commonwealth* v. *Olszewski,* 416 Mass. 707, 726 (1993). As is often observed, contested portions of a prosecutor's closing must be considered in the context of the entire argument. *Commonwealth* v. *Payton,* 35 Mass. App. Ct. 586, 597 (1993). Here, even though the prosecutor used the phrase "I think," the previous sentence makes it clear that he was talking about the scope of permissible inferences from the evidence, rather than suggesting that he had any personal knowledge of the facts. See *Commonwealth* v. *Olszewski, supra.* Indeed, the tenor of the entire paragraph in which the contested statement appears is such that no reasonable juror could have assumed that the prosecutor was adverting to facts outside the trial evidence. See *Commonwealth* v. *Krepon,* 32 Mass. App. Ct. 945, 947 (1992) (in reviewing potential prejudicial impact of judge's occasional, improper use of term "victim" in charge to jury, appellate court may "assume a certain degree of jury sophistication").

As the prosecutor's closing was not improper, defense counsel obviously cannot be faulted for failing to lodge an objection to the prosecutor's remarks. See *Commonwealth* v. *Smith,* 29 Mass. App. Ct. 449, 456 (1990). Indeed, it is settled that the failure to advance a nugatory objection cannot amount to constitutional ineffectiveness.[3] See *Commonwealth* v. *Servidori,* 6 Mass. App. Ct. 969, 970 (1979) ("an exercise in futility" does not constitute ineffective assistance). See also *Commonwealth* v. *Conceicao,* 388 Mass. 255, 264 (1983); *Commonwealth* v. *Cohen,* 412 Mass. 375, 391-392 (1992).

2. *Exclusion of testimony.* The defendant sought to call as a witness Michael Dash, the attorney who had represented the defendant at his primary session trial. The defendant indicated that Dash would testify as to two issues: (1) that during the earlier proceeding one of the victims had testified that her attacker's skin was "dark," while the other victim had stated that the assailant's skin tone was "medium"; and (2) that during the same trial, one of the victims had stated that her assailant (the defendant was out of sight at the time) had darker skin than another, unidentified man in the courtroom, while Dash believed that the defendant's skin was lighter. The judge excluded the testimony, stating that terms such as "dark" and "medium" are relative, and so not probative of any actual contradiction between the victims' identifications, and that the testimony concerning comparative skin tone, in general (including the comparison to the unidentified man present at the defendant's earlier trial) was, in any event, remote from the issue of identification.

A "trial judge . . . retains the discretion to appraise the materiality of the testimony sought to be introduced." *Commonwealth* v. *Huertas,* 34 Mass. App. Ct. 939, 941 (1993), quoting from *Commonwealth* v. *Johnson,* 16 Mass. App. Ct. 935, 936-937 (1983). In view of its limited value for assessing the reliability of the two victims' identifications, the judge did not abuse his discretion in excluding the contested evidence here.

---

[3]Even if there were error in the prosecutor's fleeting remarks, see *Commonwealth* v. *Cunneen,* 389 Mass. 216, 223-224 (1983), here it may fairly be said that the judge's forceful instructions to the jury on the proper role of closing argument erased any possibility for prejudice. See *Commonwealth* v. *Habarek,* 402 Mass. 105, 111 (1988). Compare *Commonwealth* v. *Villalobos,* 7 Mass. App. Ct. 905 (1979).

Of particular significance is the fact that neither of the witnesses changed her testimony in any significant respect from one trial to the other. Dash's testimony, therefore, was not admissible for the purpose of showing inconsistencies in the identifications. See *Commonwealth* v. *Hesketh*, 386 Mass. 153, 161 (1982) (where victim's subsequent statement "not plainly contradictory" of prior identification, judge has wide discretion to exclude). Compare *Commonwealth* v. *Basch*, 386 Mass. 620, 623-624 (1982) (no discretion to exclude extrajudicial statement where it related to crucial issue and clearly contradicted trial testimony). Further, to the extent that Dash's testimony concerning the relative skin color of the defendant and the unidentified man at the defendant's first trial represented only a conflicting opinion, it likewise was not admissible as evidence of a prior inconsistent identification. Moreover, in view of the relativity of such judgments, the judge was within his discretion in determining that the testimony was not admissible for the general purpose of impeaching the reliability of the victims' perceptual acuity.

We note also that, in an abundance of caution, the judge related to the jury at least part of Dash's proposed testimony — specifically, that the two victims had used different terms to describe the defendant's skin tone. This further reduced the possibility of any unfairness to the defendant. Where a line of inquiry is simply restricted, rather than prohibited altogether, a defendant is far less likely to suffer prejudice. See *Commonwealth* v. *Kirouac*, 405 Mass. 557, 561-562 (1987); *Commonwealth* v. *Russo*, 30 Mass. App. Ct. 923, 926 (1991). The judge's actions here were not improper. Cf. *Commonwealth* v. *Fulgham*, 23 Mass. App. Ct. 422, 426-427 (1987) (absence of cumulative alibi witness did not prejudice defendant sufficiently to warrant reversal).

*Judgments affirmed.*