COMMONWEALTH VS. SHERYL A. GORDON.

No. 98-P-706.

Plymouth. February 23, 1999. - September 28, 1999.

Present: ARMSTRONG, BROWN, & SPINA, JJ.

*Threshold Police Inquiry. Search and Seizure,* Threshold police inquiry. *Practice, Criminal,* Admissions and confessions, Motion to suppress. *Evidence,* Admissions and confessions.

In circumstances in which the defendant had been handcuffed and locked in the back of a police cruiser, Miranda warnings should have preceded any interrogation by police: a new trial was required where the inquiry of the defendant, although introductory, was objectively designed to elicit an incriminating response and brought forth a confession to the crime, and where the admission of the confession in evidence could not be said to have been nonprejudicial. [826-829]

INDICTMENT found and returned in the Superior Court Department on June 24, 1996.

A pretrial motion to suppress evidence was heard by *Gordon L. Doerfer,* J., and the case was tried before *John A. Tierney,* J.

*John F. Coffey* for the defendant.

*John E. Bradley,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendant, before us on appeal from a conviction of armed robbery, was found running from some bushes on property next to a convenience store in which a robbery by a masked person armed with a knife had been reported. She matched in height, build, and pants color a description of the robber given by the store's clerk to the first officer on the scene, who had broadcast it via dispatch to other units. When several responding officers approached, the defendant tried to flee but was forcibly detained. She resisted any questioning by thrashing and squirming to free herself, so Captain Botieri handcuffed her and she was put in a cruiser. The captain leaned

through the window, attempting, he testified, to calm her down, and asked what she was doing in the area at that early hour (5:15 A.M.). Her response was "something like: 'I didn't want to do it; he made me do it.' " She then named the man to whom "he" referred, who she said had been waiting for her nearby and was probably heading in his car toward Middleborough. The captain broadcast that information so others could look for him. As of that time, no Miranda warnings had been given to the defendant.

The officers then scanned the bushes, finding items matching the clerk's description: a pull-over mask, the distinctive jacket worn by the robber, and a sheath for a knife of the size wielded by the robber. The defendant was escorted to the store, where the clerk identified the pants she was wearing, the jacket, the mask, and knife sheath as consistent with those of the robber. He affirmed that her height and build matched the robber's, but identified her as the robber only when he heard her distinctive voice. The officers had removed the handcuffs before the showup. All this transpired within one-half hour of the clerk's call to the police. The knife was found in the bushes later that morning.

In appealing her conviction of armed robbery, the defendant argues, as she did in the trial court, that much of the evidence should have been suppressed. No meritorious question is raised as to the clothing, the mask, the knife and sheath, the showup, or the voice identification. The issue is whether the captain's question, asked without a prior Miranda warning and eliciting a highly incriminating response, was a custodial interrogation for Miranda purposes. The motion judge ruled that the query was part of a Terry-type, threshold inquiry that did not require Miranda warnings, and he allowed the response to be put in evidence.

The judge did not err in ruling that the detention of the defendant, putting her in handcuffs and in the cruiser, and asking her the question that evoked her confession, were justified under *Terry* principles. "[T]he criteria of 'forcible detention and restriction of movement — do not serve to distinguish an arrest from an investigatory stop. A complete restriction on liberty of movement occurs in the typical investigatory stop.' " *Commonwealth* v. *Crowley*, 29 Mass. App. Ct. 1, 4 n.6 (1990). For *Terry* stop purposes, "[i]t is not dispositive that the defendant was handcuffed." *Commonwealth* v. *Williams*, 422 Mass. 111, 118 (1996). Handcuffing the defendant and putting her in the

cruiser so as to secure her for a showup did not exceed the force necessary to hold her briefly for that purpose. See *United States* v. *Bautista*, 684 F.2d 1286, 1291-1292 (9th Cir. 1982), cert. denied, 459 U.S. 1211 (1983), cited with approval in *Commonwealth* v. *Williams*, 422 Mass. at 118; *Commonwealth* v. *Pandolfino*, 33 Mass. App. Ct. 96, 98 (1992); and *Commonwealth* v. *Andrews*, 34 Mass. App. Ct. 324, 329 (1993). None of that activity, including Captain Botieri's question, took the investigation beyond the proper contours of a threshold inquiry.

The *Terry* justification for the stop, however, did not insulate it from the possible application of Miranda principles. "Miranda warnings are necessary even during a *Terry* stop if the suspect has been taken into custody or if the questioning otherwise takes place in a police dominated or compelling atmosphere." *United States* v. *Bautista*, 684 F.2d at 1291. For purposes of Miranda warnings, "[t]he crucial question is whether, considering all the circumstances, a reasonable person in the defendant's position would have believed that [she] was in custody." *Commonwealth* v. *Damiano*, 422 Mass. 10, 13 (1996), citing *Berkemer* v. *McCarty*, 468 U.S. 420, 442 (1984). See *United States* v. *Perdue*, 8 F.3d 1455, 1463-1466 (10th Cir. 1993). We see no tenable way to avoid answering the crucial question in the affirmative. The defendant was handcuffed and locked in the back of a cruiser at the time Captain Botieri put his question. Compare *Commonwealth* v. *Jones*, 42 Mass. App. Ct. 378, 382-383 (1997). Certainly a reasonable person who, like the defendant, is pursued and apprehended by police, handcuffed, and locked in a police cruiser, would not feel free to leave. Although not decisive, for Miranda purposes that is one critical hallmark of custody. Miranda warnings, for example, are unnecessary in the typical traffic stop, *Berkemer* v. *McCarty*, 468 U.S. at 436-440, even though one who is stopped by a police officer for a traffic violation also does not feel free to leave. The difference is one of degree. "It is settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.' " *Id.* at 440, quoting from *California* v. *Beheler*, 463 U.S. 1121, 1125 (1983). Here, the combined indicia of handcuffs and restraint in the back of a police cruiser attain the level of custody associated with formal arrest. *Commonwealth* v. *Damiano, supra.* Miranda warnings therefore should have preceded any interrogation.

The fact that Captain Botieri's question was introductory does not automatically cause it to be classified as merely "preliminary" and not interrogatory for Miranda purposes. At the time of the question, the police knew enough about the defendant and the robbery for an objective suspicion to have fallen on her. Contrast *Commonwealth* v. *Podlaski*, 377 Mass. 339, 343 (1979); *Commonwealth* v. *Callahan*, 401 Mass. 627, 630 (1988). The captain's question explored that suspicion, and, while he was doubtless surprised that the defendant broke down and, in effect, confessed so early in the interrogation, the fact remains that the responsive answer to his question was a confession. Although introductory, the question was objectively designed "to elicit an incriminating response from the suspect." *Rhode Island* v. *Innis*, 446 U.S. 291, 301 (1980), quoted in *Commonwealth* v. *Torres*, 424 Mass. 792, 797 (1997). *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. 506, 511-512 (1989).

This is not a case where police merely asked preliminary questions to one present at a potential crime scene to determine such threshold facts as identity, or generally what had happened, in order to focus investigative efforts. See *Commonwealth* v. *Borodine*, 371 Mass. 1, 3-5 (1976), cert. denied, 429 U.S. 1049 (1977); *Commonwealth* v. *Shine*, 398 Mass. 641, 648-649 (1986); *Commonwealth* v. *Smith*, 35 Mass. App. Ct. 655, 657-658 (1993). Nor is this a case where the police engaged a suspect in general conversation unrelated to the alleged crime, see *Commonwealth* v. *Torres*, 424 Mass. at 794-798; *Commonwealth* v. *Rodriguez*, 425 Mass. 361, 365-366 (1997), asked routine questions during booking, see *Commonwealth* v. *Kacavich*, 28 Mass. App. Ct. 941, 941-942 (1990), or benefited from a unsolicited blurting by the defendant, see *Commonwealth* v. *Harkess*, 35 Mass. App. Ct. 626, 632 (1993); *Commonwealth* v. *Caldwell*, 36 Mass. App. Ct. 570, 580-581, *S.C.*, 418 Mass. 777 (1994).

The defendant's highly incriminating statement obtained without the benefit of Miranda warnings should have been suppressed. Proper objection was made to its admission. Contrast *Commonwealth* v. *Jones*, 42 Mass. App. Ct. at 383. We cannot soundly conclude that the admission of what amounted to a confession contributed nothing to a conviction that was otherwise supported only by a voice identification, nearby articles consistent with those of the robber, and the defendant's

effort to evade the police. Because the error was prejudicial, there must be a new trial.

*Judgment reversed.*

*Verdict set aside.*