## Commonwealth *vs.* Raymond Burbine.

No. 08-P-778.

Essex. February 6, 2009. - April 28, 2009.

Present: Rapoza, C.J., Rubin, & Fecteau, JJ.

*Constitutional Law,* Admissions and confessions. *Evidence,* Admissions and confessions, Voluntariness of statement. *Practice, Criminal,* Motion to suppress, Voluntariness of statement. *Due Process of Law,* Police custody.

A District Court judge erred in granting a criminal defendant's motion to suppress his statement to police, where, in the circumstances surrounding the officer's questions to the defendant, the defendant would not reasonably have held the view that he was in custody [150-153]; and where the evidence established that the statement was the product of the defendant's free will and rational mind [153-154].

Complaint received and sworn to in the Peabody Division of the District Court Department on May 11, 2007.

A pretrial motion to suppress evidence was heard by *Allen G. Swan, J.*

An application for leave to prosecute an interlocutory appeal was allowed in the Supreme Judicial Court for the county of Suffolk by *Roderick L. Ireland, J.,* and the appeal was reported by him to the Appeals Court.

*Kenneth E. Steinfield,* Assistant District Attorney, for the Commonwealth.

*Rose E. King* for the defendant.

Fecteau, J. The Commonwealth appeals from a District Court judge's allowance of the defendant's motion to suppress statements. The defendant was charged with various weapons violations, including unlawful possession and carrying of a handgun, two forms of ammunition, a stun-gun, and a double-edged knife, and defacing the serial number of a handgun. The Commonwealth contends that the judge erroneously decided that the defendant

was in custody for Miranda purposes by relying upon the officer's subjective, unexpressed intent to arrest the defendant. *Miranda* v. *Arizona*, 384 U.S. 436, 444 (1966). The Commonwealth also contends the judge erroneously ruled that the defendant's statements were involuntary without having made any findings of fact to support such a decision or expressing any reasons for so deciding. We reverse.

On May 5, 2007, at 1:30 A.M., police responded to a radio call about a domestic disturbance between the defendant and his girlfriend. After the police arrived and at the girlfriend's request, the defendant agreed to leave the house. After he and the police departed, the girlfriend recovered a duffle bag full of weapons, called the police again, and asked them to remove some of the defendant's personal belongings. She handed over the duffle bag when an Officer Dickinson returned to her house. The officer brought the bag back to the police station for inventory. Inside the bag he found a number of weapons, including a handgun and knives. After a firearms license inquiry, officers determined that the defendant was not properly licensed to possess a handgun.

The officer called the defendant and asked him to come to the police station to retrieve some of his property, which his girlfriend did not want in her apartment. The officer did not identify any items nor did he inform the defendant that he had no intention of returning the weapons. When the officer saw the defendant arrive, he and a second officer went outside and met the defendant in the parking lot. Both officers were in uniform, and neither of them drew their guns. Officer Dickinson told the defendant that his girlfriend wanted some items removed, including the guns in the bag, and asked if they were his; the defendant admitted owning all but one, saying that the gun with the serial number removed belonged to his girlfriend. The defendant was then arrested.

In his testimony, the officer conceded that he misled the defendant to get him to come to the police station. The officer also said he thought that if the defendant decided to come he would likely not be free to leave and that if the defendant admitted he owned the contents of the bag, the officer was likely going to arrest him. The officer did not communicate these thoughts to the defendant, however.

The motion judge concluded, first, that Miranda warnings were required prior to the interrogation of the defendant, finding that the defendant was not free to leave and that it was the possible intention of the officer to arrest the defendant before this questioning about the guns; the judge then also concluded that the statement was involuntary, even if warnings were unnecessary. He allowed the motion for both reasons.

*Discussion.* The United States Constitution protects defendants in criminal cases against the use of their involuntary statements as evidence against them. *Miranda* v. *Arizona*, 384 U.S. at 467-479. See *Commonwealth* v. *Murray*, 359 Mass. 541, 545-546 (1971).

In reviewing the defendant's motion to suppress, we must first decide whether Miranda warnings were required under the circumstances. If they were required but not given, the decision of the judge must stand. Second, even if such warnings were not necessary, the court must consider whether the defendant's statements were voluntarily made, without intimidation or coercion. See *Commonwealth* v. *Tavares*, 385 Mass. 140, 145, cert. denied, 457 U.S. 1137 (1982); *Commonwealth* v. *Williams*, 388 Mass. 846, 850-856 (1983); *Commonwealth* v. *Koney*, 421 Mass. 295, 304-305 (1995) (despite defendant's intoxication, statements were product of a "rational mind").

Miranda warnings are required when a person is subject to custodial interrogation, that is, when a person has been questioned by law enforcement officers after being taken into custody or otherwise deprived of his freedom of action in a significant way. See, e.g., *Miranda*, 384 U.S. at 444; *New York* v. *Quarles*, 467 U.S. 649, 654 (1984); *Commonwealth* v. *Bryant*, 390 Mass. 729, 736-737 (1984). Here, there is no issue as to whether the defendant was subject to interrogation; the issue is whether the defendant was in custody.

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. "[T]he safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a "degree associated with formal arrest.' " *Berkemer* v. *McCarty*, 468 U.S. 420, 440 (1984),

quoting from *California* v. *Beheler*, 463 U.S. 1121, 1125 (1983). The defendant has the burden of proving that interrogation was custodial. *Commonwealth* v. *Larkin*, 429 Mass. 426, 432 (1999). The test is an objective one: would a reasonable person in the circumstances of the defendant's interrogation have perceived the environment as coercive? See *Stansbury* v. *California*, 511 U.S. 318, 323-325 (1994); *Commonwealth* v. *Kirwan*, 448 Mass. 304, 309 (2007).

Here, the officers had not yet placed the defendant under arrest; thus, we are required to examine the objective circumstances present at the time of the questioning.[1] "The crucial question is whether, considering all the circumstances, a reasonable person in the defendant's position would have believed that he was in custody," *Commonwealth* v. *Damiano*, 422 Mass. 10, 13 (1996), or "whether, from the point of view of the person being questioned, the interrogation took place in a coercive environment." *Commonwealth* v. *Bryant*, 390 Mass. at 736.

While we defer to the motion judge's subsidiary findings of fact, we conclude that the judge did not apply the correct legal test, because he focused on the officer's opinion in concluding that the defendant was not free to leave rather than analyzing how the circumstances would have appeared to a reasonably objective person.

The United States Supreme Court and the Massachusetts appellate courts have held that, standing alone, "[a] policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer* v. *McCarty*, 468 U.S. at 442. See also *Stansbury* v. *California*, 511 U.S. at 319; *Commonwealth* v. *Kirwan*, 448 Mass. at 309; *Commonwealth* v. *LeBeau*, 451 Mass. 244, 254 n.11 (2008).

Here, the atmosphere surrounding the officer's questions was

---

[1] "In making the custody determination, we examine four factors: (1) the place of the interrogation; (2) whether the police conveyed any belief or opinion that the person being questioned was a suspect; (3) whether the questioning is aggressive or informal; and (4) whether the suspect was free to end the interview by leaving the place of interrogation, or whether the interview ended with the defendant's arrest." *Commonwealth* v. *Murphy*, 442 Mass. 485, 493 (2004), citing *Commonwealth* v. *Sneed*, 440 Mass. 216, 220 (2003).

neither coercive nor intimidating. See *Commonwealth* v. *Murphy*, 442 Mass. 485, 492-493 (2004); *Commonwealth* v. *Gordon*, 47 Mass. App. Ct. 825, 827-828 (1999) (court held it was improper to question the defendant without Miranda warnings when police handcuffed and placed her in a cruiser). "For purposes of Miranda warnings, '[t]he crucial question is whether, considering all the circumstances, a reasonable person in the defendant's position would have believed that [he] was in custody.' " *Commonwealth* v. *Gordon, supra* at 827, quoting from *Commonwealth* v. *Damiano, supra.* In our view, although the defendant was likely going to be arrested for weapons violations, he would not have reasonably held the view that he was in custody. This case is analogous to the cases in which we have held that an officer who has evidence that a driver is intoxicated is still permitted to ask questions without Miranda warnings. See *Commonwealth* v. *Merritt*, 14 Mass. App. Ct. 601, 603-606 (1982); *Commonwealth* v. *Seymour*, 39 Mass. App. Ct. 672, 678-680 (1996); *Commonwealth* v. *Becla, ante* 142 (2009). "[W]hile this investigative focus may make the questioning the 'starting point' for a prosecution, it does not create the custodial environment which requires Miranda warnings." *Commonwealth* v. *Merritt*, 14 Mass. App. Ct. at 605.

When the officers interrogated the defendant, they did not place him under arrest, handcuff him, or physically restrain him by placing him in a cruiser or escorting him into the station. Compare *Commonwealth* v. *Gordon*, 47 Mass. App. Ct. at 827-828. They asked him a question about whether he owned the guns in the bag while he and they were standing in the police station parking lot. The questions furthered police investigation into ownership for which they had some evidence, notwithstanding the fact that affirmative answers would likely be incriminating and lead to the defendant's arrest. "[T]he objective circumstances of the interrogation do not disclose that there was a ' "restraint on [the defendant's] freedom of movement" of the degree associated with a formal arrest,' *California* v. *Beheler*, 463 U.S. [at] 1125 . . . , quoting *Oregon* v. *Mathiason*, 429 U.S. 492, 495 (1977), so as to place the defendant in custody." *Commonwealth* v. *Kirwan*, 448 Mass. at 313. Therefore, because the defendant was not in custody, the officer was not required to

give the defendant Miranda warnings prior to asking the few questions he did in the parking lot concerning the weapons in the bag.

*Voluntariness.* To determine whether a defendant made his statement voluntarily, a judge examines whether, "in light of the totality of the circumstances . . . the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act." *Commonwealth* v. *Hilton*, 450 Mass. 173, 177 (2007), quoting from *Commonwealth* v. *Selby*, 420 Mass. 656, 663 (1995). The court must determine whether the defendant made the statements as a result of a voluntary decision and not as the product of coercion. *Commonwealth* v. *Mahnke*, 368 Mass. 662, 680 (1975), cert. denied, 425 U.S. 959 (1976). See also *Commonwealth* v. *Tavares*, 385 Mass. at 145.

"A statement is voluntary if it is the product of a 'rational intellect' and a 'free will.' " *Commonwealth* v. *Selby*, 420 Mass. at 662, quoting from *Commonwealth* v. *Davis*, 403 Mass. 575, 581 (1988). There is no bright line test for voluntariness, *Commonwealth* v. *Fernette*, 398 Mass. 658, 662 (1986), but its determination must be made after the court's consideration of the totality of the circumstances. *Commonwealth* v. *Tavares*, 385 Mass. at 146. *Commonwealth* v. *Berg*, 37 Mass. App. Ct. 200, 203-204 (1994).

Under the "totality of the circumstances" test, we consider all of the relevant circumstances surrounding the statement and the individual characteristics and conduct of the defendant. *Commonwealth* v. *Parker*, 402 Mass. 333, 340 (1988), *S.C.*, 412 Mass. 353 (1992), *S.C.*, 420 Mass. 242 (1995). Relevant factors include, but are not limited to, the "conduct of the defendant, the defendant's age, education, intelligence and emotional stability, . . . physical and mental condition, . . . and the details of the interrogation, including the recitation of Miranda warnings." *Commonwealth* v. *Mandile*, 397 Mass. 410, 413 (1986). *Commonwealth* v. *Hilton*, 450 Mass. 173, 177 (2007).

Here, the record does not support the judge's conclusion of involuntariness. Rather, the evidence established that the statement was the product of the defendant's free will and rational mind. See *Commonwealth* v. *Hilton, supra.* There was no suggestion or appearance that the defendant was unfamiliar with

the English language or laboring under any physical or mental disability, nor was there evidence of insobriety, immaturity, or lack of emotional stability. See *Commonwealth* v. *LeBeau*, 451 Mass. at 255-256. See also *Commonwealth* v. *Auclair*, 444 Mass. 348, 354-355 (2005). There was also no evidence that the officers offered him any promises or other inducements. Contrast *Commonwealth* v. *Magee*, 423 Mass. 381, 386-387 (1996). Once in the parking lot, only one officer spoke to the defendant while the other stood to the side. The questioning officer did not employ trickery to gain the defendant's admission of ownership. On this record, there was no basis for the judge to rule the statement involuntary.

Therefore, the judge's order suppressing the defendant's statements concerning gun ownership must be reversed.

*So ordered.*