NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-331                                           Appeals Court

COMMONWEALTH  vs.  JASON SPRING.

No. 18-P-331.

Worcester.     March 8, 2019. - December 5, 2019.

Present:  Hanlon, Agnes, & Sullivan, JJ.

Firearms.  Evidence, Firearm, Result of illegal search, Result
    of illegal interrogation.  Search and Seizure, Fruits of
    illegal search, Plain view.  Practice, Criminal, Motion to
    suppress.

Complaints received and sworn to in the East Brookfield
Division of the District Court Department on January 4 and
February 23, 2016.

A motion to suppress was heard by Maura K. McCarthy, J.;
and the case was tried before Mark A. Goldstein, J.

Darla J. Mondou for the defendant.
Susan M. Oftring, Assistant District Attorney, for the
Commonwealth.

HANLON, J.  After a jury trial in the District Court, the

defendant, Jason Spring, was convicted of carrying a firearm

without a license and possession of ammunition without a firearm

identification card (FID).  He appeals, arguing that his motion

to suppress should have been allowed and, for that reason, he is entitled to a new trial.  We agree that the motion should have been allowed, and his admission that he did not have a license to carry the firearm or an FID card suppressed, but we conclude that the error was harmless beyond a reasonable doubt.  We therefore affirm.

Background.  We supplement the judge's findings on the motion to suppress with uncontested facts from the testimony at the hearing.  On January 1, 2016, Rutland Police Sergeant Nicholas A. Monaco noticed a black Jeep parked in a private dirt parking lot at approximately 2:10 A.M.  Monaco observed a T-shirt hanging in the driver's side window, and that the car's windows were fogged.  The defendant was asleep in the car; when awakened, he identified himself as "Jason Spring from Holden," but when the officer asked for his driver's license, the defendant responded that he did not have his wallet.  Monaco asked who was the owner of the car, and the defendant responded that "the car might have belonged to a guy he worked with."  Monaco told the defendant to get out of the car, handcuffed him, and placed him in the rear of Monaco's police cruiser.  Monaco then conducted a Registry of Motor Vehicles inquiry and discovered that the defendant's driver's license had been revoked and the car was unregistered.  Monaco also learned the

defendant had an outstanding default warrant from the District Court.

As a result of this information, Monaco decided that the defendant's car would be towed. Another officer arrived, and the officers conducted an inventory search of the car pursuant to police department policy. The inventory search produced a large capacity rifle (a Bushmaster semiautomatic), three magazines, ammunition, a single Prednisone pill, and a glass pipe with marijuana residue.

Monaco testified that the case containing the rifle, the magazines, and the ammunition was not in plain view but covered by clothes. When he found it, he returned to his cruiser and searched the relevant computer database for any record that the defendant possessed a license to carry a firearm or an FID; he discovered that the defendant had neither.

Afterwards, Monaco asked the defendant if he had either a license to carry the firearm or an FID. The defendant responded that he did not. Monaco acknowledged that, when he asked the question, he had not advised the defendant of his Miranda warnings. Monaco then transported the defendant to the Rutland Police Department where he was booked and read his Miranda rights for the first time.

As noted, prior to trial, the defendant moved to suppress "the stop, search, seizure and questioning as a result of an

unauthorized and illegal stop and search of a vehicle."  After the hearing, the judge issued written findings of fact and rulings of law and denied the defendant's motion.  Thereafter, the defendant was tried before six-person jury, with a different judge presiding, and he was convicted of carrying a firearm without a license and possession of ammunition without an FID card.  The defendant appeals, seeking a new trial and claiming that the motion judge erred in denying his motion to suppress his "statements made in response to interrogation while handcuffed and secured in a locked cruiser without being provided Miranda warnings."

Discussion.  "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [her] ultimate findings and conclusions of law.'"  Commonwealth v. Cawthron, 479 Mass. 612, 616 (2018), quoting Commonwealth v. Scott, 440 Mass. 642, 646 (2004).  The defendant's motion to suppress argued only that he was subject to an illegal stop and search and that, as a result, the evidence seized "as well as any statements made by him prior to Miranda" should be suppressed.  At the end of the hearing, the defendant argued again that the arrest and search were improper, although he did note that no Miranda warnings were given until he was at the police station.  Likely for that reason, the motion judge made

findings of fact and rulings of law about the search and the arrest but did not make any specific findings or rulings regarding the defendant's statements.

The issue for us, then, is whether, on these facts, the defendant was subjected to custodial interrogation improperly, without being provided with Miranda warnings. "To determine whether a defendant was subjected to custodial interrogation, 'the court considers several factors: (1) the place of the interrogation; (2) whether the officers have conveyed to the person being questioned any belief or opinion that that person is a suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the person being interviewed; and [previously] (4) whether, at the time the incriminating statement was made, the person was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with an arrest.'" Cawthron, 479 Mass. at 617-618, quoting Commonwealth v. Groome, 435 Mass. 201, 211-212 (2001).

This fourth factor was recently revised by the Supreme Judicial Court in Commonwealth v. Matta, 483 Mass. 357, 363 (2019), where the court concluded,

> "In short, because, in most situations, a reasonable person would not believe that he or she was free to leave during a police encounter, using that standard does not produce the

information necessary to determine whether a seizure has occurred. Rather, the inquiry must be whether, in the circumstances, a reasonable person would believe that an officer would compel him or her to stay.

"Although this is a different question from what we heretofore have asked, the analysis takes the same circumstances into consideration. Whether an encounter between a law enforcement official and a member of the public constitutes a noncoercive inquiry or a constitutional seizure depends upon the facts of the particular case."

As a result, it is still the case that, "[r]arely is any single factor conclusive." Cawthron, 479 Mass. at 618, quoting Commonwealth v. Bryant, 390 Mass. 729, 737 (1984).

As to location, "we consider the circumstances from the point of view of the defendant" (quotation and citation omitted). Cawthron, 479 Mass. at 618. Here, the defendant was questioned while he was handcuffed in the back of a police cruiser, shortly after 2 A.M., on private property. The circumstances of the inquiry clearly favor the defendant's argument here.

Next, in Cawthron, the court stated that, "[i]f the detectives had conveyed to the defendants that they were suspects, that might support a determination that the defendants were in custody before they made the incriminating statements." Cawthron, 479 Mass. at 619. Here, the defendant was detained because he could not produce identification or prove ownership of the car. While he was handcuffed and seated in the back of

Monaco's cruiser, Monaco questioned him about whether he had the necessary documentation for the gun and ammunition seized from the back of the car.  In fact, the question was independent from the reason the defendant had been detained initially.  Compare id.; Commonwealth v. Shine, 398 Mass. 641, 648-649 (1986) (notwithstanding interrogating officer's uncommunicated intent to arrest defendant, where officer asked only "natural preliminary questions designed to determine the defendant's identity and what he knew about the crime," court concluded defendant was not subject to custodial interrogation).

However, Monaco's question was not a "vague and unformed suspicion of some illicit activity."  Cawthron, 479 Mass. at 619.  While possessing a firearm or ammunition is not necessarily illegal, here, Monaco had already learned that the defendant lacked proper documents for both the gun and the ammunition, making the line of questioning clearly relevant to specific illicit activity.  Id.  In addition, the defendant, already handcuffed and in the back of Monaco's cruiser, was aware that he did not possess proper documents.  We therefore conclude that a person in the defendant's position would reasonably conclude that Monaco's questions conveyed his suspicion that the defendant had committed a crime.

On the issue of the tone of the exchange, the motion judge found only that the defendant was "cooperative."  The record is otherwise silent on this third prong.

Finally, the critical question is "whether, in the circumstances, a reasonable person would believe that an officer would compel him or her to stay."  Matta, 483 Mass. at 363.  In Commonwealth v. Gordon, 47 Mass. App. Ct. 825, 827 (1999), this court held that, while the experience of being handcuffed and placed in a police cruiser did not necessarily convert a Terry stop[1] based on reasonable suspicion into an arrest, there, "the combined indicia of handcuffs and restraint in the back of a police cruiser attain[ed] the level of custody associated with formal arrest. . . .  Miranda warnings therefore should have preceded any interrogation."

So too here, the defendant was asked whether he had an FID card or license to carry while handcuffed in the rear of a police cruiser.  Afterwards, he was in fact arrested.  In that circumstance, the defendant reasonably would have believed that the officer would compel him to stay, if he chose to leave.  See Commonwealth v. Damelio, 83 Mass. App. Ct. 32, 35 (2012) ("whether the defendant [is] free to leave is based on a reasonable person standard, and not on the subjective state of

_____

[1] See Terry v. Ohio, 392 U.S. 1 (1968).

mind of the officers"). As a result, we conclude that, before posing the question, Monaco should have informed the defendant of his Miranda rights; because he did not, the statement should have been suppressed.

The issue then becomes whether the erroneous admission of the defendant's statement that he did not have an FID card or a license to carry was "harmless beyond a reasonable doubt." Commonwealth v. Tyree, 455 Mass. 676, 700 (2010), quoting Chapman v. California, 386 U.S. 18, 24 (1967). After careful review, we are satisfied that "[a]lthough the statement[] . . . should have been suppressed, [its] admission in evidence was harmless beyond a reasonable doubt. See Chapman[, supra]. To determine whether erroneously admitted evidence was harmless, we consider factors such as 'the importance of the evidence in the prosecution's case; the relationship between the evidence and the premise of the defense; who introduced the issue at trial; the frequency of the reference; whether the erroneously admitted evidence was merely cumulative of properly admitted evidence; the availability or effect of curative instructions; and the weight or quantum of evidence of guilt.'" Commonwealth v. Neves, 474 Mass. 355, 365-366 (2016), quoting Tyree, supra at 701.

Here, at the time that the defendant admitted to Monaco that he did not have a license to carry or an FID card, the

officer already had discovered the gun and the ammunition that formed the basis for the convictions. After careful review, we conclude that this independent discovery, prior to the defendant's confession, renders the inadmissible admission evidence harmless beyond a reasonable doubt. See Commonwealth v. Greenwood, 78 Mass. App. Ct. 611, 623 (2011), quoting Commonwealth v. Dagraca, 447 Mass. 546, 555 (2006) (court's task is to determine whether properly admitted evidence was sufficiently "powerful as to neutralize the erroneously admitted" evidence). Monaco testified at trial, without objection, that before questioning the defendant on the issue, Monaco had learned, by searching the firearms database for the defendant's name, that the defendant did not possess the requisite license or FID card. Most importantly, it was the defendant's burden at trial to produce evidence that he had the proper license and FID card, and he failed to do so. See Commonwealth v. Weaver, 474 Mass. 787, 815 (2016) ("lack of license is not an element of unlicensed possession, but rather an affirmative defense"). In fact, the defendant testified at trial that he had neither a license to carry nor an FID card.[2]

---

[2] The defendant does not argue that he would not have testified at trial but for the erroneous denial of his motion to suppress.

Given the defendant's inability to produce the proper license and FID card, his testimony at trial that he did not have them, and Monaco's independent source for the information, we are satisfied that the defendant's admission to Monaco was cumulative of the properly admitted evidence and thus harmless beyond a reasonable doubt.  See Greenwood, 78 Mass. App. Ct. at 623.

Judgments affirmed.