Lu, John T., J.
*129 INTRODUCTION
The defendant, Raul Rodriguez (Rodriguez), moves to suppress a tape-recorded statement he made to Lawrence police officers on October 22, 2006. Rodriguez claims that police did not scrupulously observe his invocation of his right to remain silent. The Commonwealth argues that Rodriguez was advised of his Miranda warnings before the interrogation, and that he did not invoke his right to remain silent, but willingly spoke to the police.
The Court finds that when police asked Rodriguez if he wished to speak to them, he responded, “I don’t think so” and said that he was drunk, that this was not a clear and unequivocal invocation of his right to remain silent, and the court denies the motion to suppress statements.
FINDINGS OF FACT
Based on the evidence presented and reasonable inferences from the evidence, the court makes the following findings of fact.
1. Shortly after 4:00 a.m. on October 22, 2006, Lawrence police officer Allen Leary (Leary) was dispatched to 216 Andover Street in Lawrence, for a call of a man shot in a garage.[1] Leary was in uniform and on marked cruiser patrol.
2. When he arrived he drew his gun and saw a row of six to ten garage stalls with the inside lights on. He could not hear any activily. Rodriguez answered Leary’s knock on the door of the house.
3. Given the nature of the call, Leary kept his gun trained on Rodriguez and twice told him to put his hands up. Rodriguez put his hands up after the second order.
4. Rodriguez was crying and said, “You’re going to arrest me, you’re going to arrest me.” Leary asked him what was going on and Rodriguez said that his buddy was shot over drugs, and to “go ahead and look.”
5. After some discussion of who was going to open the garage door, and after the arrival of another officer, Rodriguez opened the garage and Leary saw a pool of blood and a man lying face down, along with the bullet’s exit wound.
6. Leary determined that he was dead, called for Lawrence police detectives and requested notification of state police detectives.
7. Numerous police arrived immediately.
8. Leary’s responsibility was mostly to prevent anyone from contaminating the scene.
9. Rodriguez had been drinking and smelled of alcohol but had no difficulty walking.
10. Leary overheard Rodriguez tell Detective Maurice Aguiar (Aguiar) that, “it wasn’t over drugs” prompting Leary to confront him with his earlier statement. Rodriguez said he never told Leary that it was over drugs.
11. Aguiar brought Rodriguez back to the Lawrence police department. Rodriguez was not handcuffed or restrained in any way.
12. Aguiar and state police Sergeant Dennis Marks (Marks) learned that the brother-in-law of the deceased man said that they had gone to Rodriguez’s home to have a few beers and that Rodriguez, while playing with a gun, unintentionally shot and killed him.
13. Marks administered the following Miranda warnings to Rodriguez[2]
a. Before we ask you any questions, you must understand your rights.
b. You have the right to remain silent. Do you understand that?
c. Anything you say can and will be used against you in court. Do you understand that?
d. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. Do you understand that?
e. If you cannot afford a lawyer, one will be appointed for you before questioning if you wish. Do you understand that?
f. If you decide to answer questions now without a lawyer present, you will still have the right to stop questioning at any time until you talk to a lawyer. Do you understand that?
g. Do you understand what I’ve just read to you?
14. Rodriguez’s responses were appropriate and indicated that he understood the warnings.
15. The interview continued:
a. Marks: And having these rights in mind, do you wish to talk to me now?
Rodriguez: I don’t think so.
The intonation of Rodriguez’s voice indicated that he was tentative in this response; he did not intend to or communicate, “I don’t think so” as a colloquial version of “definitely not,” nor could it reasonably be understood as unequivocal.
b. Marks: Ok, you don’t think so. Is there a reason?
Rodriguez: No.
c. Marks: Ok. What I’m going to do now is date this and time it.
Rodriguez: I’m drunk.
d. Marks: You’re drunk?
Rodriguez: Yeah.
e. Marks: What I want to do is have you sign right here. What you’re signing is that I have given you your Miranda warnings. You’re not signing that you - know that you’re innocent or guilty or anything like that that I gave you your warnings and that you understood them.
*130 Rodriguez: I can’t sign them because I’m drunk.
f. Marks: Ok. So you are refusing to sign.
Rodriguez: I’m not refusing to sign, I just I don’t know what just happen.
g. Marks: You don’t know what just happen? Ok. Do you want me to explain to you what happened or do you want an explanation?
Rodriguez: Yes.
h. Marks: Ok. You seem to be understanding everything I’m saying to you.
Rodriguez: I (inaudible) don’t (inaudible) fully but.
I. Marks: Ok. Do you know where you are right now?
Rodriguez: Yes. The police station.
j. Marks: Ok and do you know that that where in the police station you’re at?
Rodriquez: Lawrence
k. Marks: In Lawrence, OK. And do you know why you’re here?
Rodriguez: I understand that something happen that I know 100% it wasn’t me or whatever happen and that’s it.
l. Marks: OK. Now you say you don’t when I asked if you wanted to talk to me you said I don’t think so but you are talking to me.
Rodriguez: Ok let’s talk then.
16. Rodriguez made various admissions and ultimately, a confession.
17. Rodriguez was minimally under the influence of alcohol and his answers indicated a clear thinking process initially intended to avoid prosecution, and then, failing that, to minimize his criminal liability. To the extent that Rodriguez claimed, during the interview, that he was significantly impaired by alcohol, the Court disbelieves him.
DISCUSSION
Rodriguez moves to suppress his tape-recorded statements on the basis that his waiver of Miranda rights was involuntary because police did not scrupulously honor his right to remain silent. The Commonwealth contends that Rodriguez was properly advised of his Miranda warnings before the start of interrogation; he did not invoke his right to remain silent, but waived his rights and willingly spoke to the police; and Rodriguez’s statements to the police were voluntary.
Miranda and Waiver
“Miranda warnings are only necessary where one is the subject of custody and official interrogation.” Commonwealth v. Larkin, 429 Mass. 426, 432 (1999), citing Illinois v. Perkins, 496 U.S. 292, 297 (1990). The defendant bears the burden of proving that he was in custody at the time of questioning. Id. “A person is in custody whenever he is ‘deprived of his freedom of action in any significant way.’ ” Commonwealth v. Groome, 435 Mass. 201, 211 (2001), quoting Commonwealth v. Haas, 373 Mass. 545, 550 (1977). “The crucial question is whether, considering all the circumstances, a reasonable person in the defendant’s position would have believed that he was in custody.” Id., quoting Commonwealth v. Damiano, 422 Mass. 10, 13 (1996). There is no dispute that Rodriguez was in custody at the time he made his tape-recorded statement to police.
Rodriguez was at the Lawrence police station for questioning in connection with a shooting. Leary had responded to a call reporting that a man had been shot. On arrival, Leary did not see anybody outside so he knocked on the door of the house. Rodriguez answered and stated that his “buddy has been shot and it was over drugs.” He also said, “You’re going to arrest me, you’re going to arrest me.” Leary did not interrogate Rodriguez; he called for backup and secured the scene. Shortly after Leary’s call, Aguiar arrived. Leary overheard Rodriguez tell Aguiar the shooting was not related to drugs, and confronted him with his earlier statement.
At this point, Aguiar transported Rodriguez to the Lawrence police station for questioning. Aguiar and Rodriguez met Marks at the station. Marks advised Rodriguez of his Miranda warnings prior to questioning, they had some discussion about why police brought Rodriguez to the station, and Rodriguez gave a tape-recorded statement to the police.[3]
It is the Commonwealth’s burden to prove beyond a reasonable doubt that, given the totality of the circumstances, Rodriguez voluntarily waived his Miranda rights. Commonwealth v. Auclair, 444 Mass. 348, 353 (2005). Determining whether a Miranda waiver is proper involves an inquiry into whether the defendant’s rights were “scrupulously observed” and “knowingly, intelligently, and voluntarily waived” by the defendant. Commonwealth v. Garcia, 379 Mass. 422, 428 (1980). Factors to be considered in assessing the voluntariness of a waiver include the scrupulousness with which police honor a suspect’s assertion of his rights, the suspect’s mental and emotional state, the place, duration and circumstances of the interrogation, and whether any improper inducements were offered. Commonwealth v. Magee, 423 Mass. 381, 386-87 (1996). Rodriguez’s waiver of Miranda was voluntary because he did not invoke his right to remain silent, but willingly spoke to the police.
A defendant’s invocation of the right to remain silent must be clear and unequivocal. Commonwealth v. Almonte, 444 Mass. 511, 519 (2005) [overruled on different grounds], citing Commonwealth v. Selby, 420 Mass. 656, 662 (1995). Whether such a clear and unequivocal invocation has been made requires the court to look at the totality of the circumstances. See Commonwealth v. Hilton, 443 Mass. 597, 605 (2005). This is a fact-specific inquiry. Commonwealth v. Sicari, 434 Mass. 732, 748 (2001), cert. denied, 534 U.S. 1142 (2002).
*131 After administering Miranda warnings to Rodriguez, Marks asked, “. . . [d]o you wish to talk to me now?” In response, Rodriguez tentatively said, “I don’t think so.” Noticing Rodriguez’s uncertain tone, Marks asked Rodriguez if there was a specific reason he did not want to speak to the police and Rodriguez stated, “No . . . I’m drunk.” Marks asked Rodriguez to sign the form indicating he had been given his Miranda warnings and understood them, Rodriguez stated, “I can’t sign them because I’m drunk.”
Rodriguez said that he did not know “what just happened” and Marks offered an explanation. Rodriguez’s responses were appropriate and indicated he understood what was being said to him and what was going on around him. Marks asked Rodriguez where he was and he said he knew he was in the Lawrence police station; when asked why he was at the police station Rodriguez said, “I understand that something happen [sic] that I know 100% it wasn’t me or whatever happen [sic] and that’s it.”
Viewed in context, Rodriguez’s statement, “I don’t think so,” was not a clear and unequivocal invocation of his right to remain silent. The statement was a tentative, “I’m not sure,” as if Rodriguez was undecided about whether he wished to speak with the police. Marks scrupulously observed Rodriguez’s rights. He asked Rodriguez if he understood what was happening; and offered Rodriguez an explanation. Marks asked Rodriguez if he knew why he was at the police station and Rodriguez stated, “I understand that something happen [sic] that I know 100% it wasn’t me or whatever happen [sic] and that’s it.” At this point, Marks reminded Rodriguez that he had said he did not want to talk to the police, but Rodriguez continued to speak about the shooting and ultimately gave a confession.
Rodriguez knowingly, voluntarily, and intelligently waived his right to remain silent by indicating that he understood his Miranda rights and by answering Marks’s questions after receiving the warnings. Commonwealth v. Freeman, 430 Mass. 111, 115 (1999); see also Commonwealth v. Harris, 11 Mass.App.Ct. 165, 173 (1981) (“a knowing and intelligent waiver of [Miranda] rights maybe inferred, in circumstances not otherwise casting doubt on voluntary waiver”).
Voluntariness of Statements
In addition to the validity of Rodriguez’s Miranda waiver, the Court must determine whether the defendant’s statements were themselves voluntary. In making this determination, the Court looks to the totality of the circumstances “surrounding the making of the statements themselves ... to determine whether they were the product of a ’’rational intellect and a free will." Selby, 420 Mass. at 662. The test for voluntariness of statements is “whether, in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act.” Id. at 663. Factors to consider include the defendant’s age, education, and intelligence, his experience with the criminal justice system, his physical and mental condition, whether he was under the influence of drugs or alcohol, whether promises or other inducements were made to him by police, and the details of the interrogation, including the recitation of Miranda warnings. Commonwealth v. Beland, 436 Mass. 273, 279 (2002), quoting Commonwealth v. Jackson, 432 Mass 82, 86 (2002). No one factor is necessarily determinative and a statement is not deemed involuntary due to the mere presence of one or more of these factors. Selby, 420 Mass. at 664.
While intoxication alone does not render an otherwise voluntary statement involuntary, substantial evidence of intoxication or other impairment obligates the court to make a determination as to the voluntar-iness of the statements. Commonwealth v. Murphy, 426 Mass. 395, 397-98 (1998). “Statements that are attributable in large measure to a Defendant’s debilitated condition . . . are not the product of a rational intellect or free will and are involuntary.” Commonwealth v. Allen, 395 Mass. 448, 455 (1985) (citations omitted). The key consideration for the Court is whether the statements were freely made and were the product of a rational intellect, despite the defendant’s physical or mental impairment. Commonwealth v. Koney, 421 Mass. 295, 304 (1995).
Rodriguez’s interaction with Aguiar and Marks indicate he was aware of his situation and understood what was happening. He responded clearly and coherently to questions; there was no slurred speech. Rodriguez also responded appropriately to the questions he was asked; he identified his location and knew why he was at the police station. He feigned intoxication. See Commonwealth v. Clark, 432 Mass. 1, 12-13 (2000) (defendant’s statements were voluntary despite being shot in head where defendant was able to respond appropriately to questions asking his social security number, date of birth, name, telephone number, address, and marital status).
Also supporting a finding that Rodriguez’s statements were voluntary is their self-serving motive. See Jackson, 432 Mass. at 87. Rodriguez’s attempts to convince police that he was not responsible for the shooting illustrate his clear mental capacity and ability to withhold information, as well as the presence of mind to recognize his potential criminal liability. See id. Rodriguez’s statements were the product of his free will and rational intellect.
ORDER
The defendant Raul Rodriguez’s Motion to Suppress his tape-recorded statement to police is DENIED.

 The prosecutor’s memorandum refers to Officer Laird.

 The transcript admitted into evidence is nearly a verbatim transcription, but the court makes findings of fact as to the precise words spoken during portions of the interview. The *132 Court listened to the audio recording of the statement many times. To the extent that there are differences, the court finds that the transcript is unintentionally inaccurate.

 Rodriguez’s responses were appropriate and indicated he understood the warnings.