COMMONWEALTH *vs.* KATHLEEN HILTON.

Essex. October 1, 2007. - December 6, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Homicide. Burning a Dwelling House. Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Evidence,* Admissions and confessions, Voluntariness of statement. *Practice, Criminal,* Admissions and confessions, Voluntariness of statement, Competency to stand trial. *Mental Impairment.*

A trial court judge, in granting a criminal defendant's supplemental motion to suppress evidence of statements that she made to a court officer, was plainly wrong in certain subsidiary findings supporting his ultimate conclusion that the defendant's statements were involuntary due to her debilitated mental condition; however, where this court was unable to determine if the judge would have allowed the motion to suppress without the erroneous findings, this court vacated the order for suppression and remanded the matter for further consideration. [177-181]

INDICTMENTS found and returned in the Superior Court Department on March 10, 1999.

Following review by this court, 443 Mass. 597 (2005), a pretrial supplemental motion to suppress evidence was heard by *Isaac Borenstein,* J.

An application for leave to file an interlocutory appeal was allowed by *Spina,* J., in the Supreme Judicial Court for the county of Suffolk, and the case was reported by him to the full court.

*Marcia H. Slingerland,* Assistant District Attorney, for the Commonwealth.

*Michael F. Natola* for the defendant.

SPINA, J. This is the Commonwealth's second interlocutory appeal from the allowance of a motion to suppress statements made to a court officer. Following the first appeal we declined to consider the defendant's claim of involuntariness because it was raised for the first time on appeal. See *Commonwealth* v. *Hilton,*

443 Mass. 597, 618-619 n.12 (2005). After remand, the defendant raised the issue of the voluntariness of her statement to the court officer in a supplemental motion to suppress. The same judge who decided the original motion to suppress also decided the supplemental motion to suppress. He concluded that the defendant's inculpatory statement to the court officer was involuntary, and he ordered the statement suppressed. The Commonwealth sought leave to prosecute an interlocutory appeal. A single justice granted leave to appeal directly to the full court. Some of the judge's subsidiary findings were plainly wrong. But because we are unable to determine if the judge would have allowed the supplemental motion to suppress without the erroneous findings, we vacate the order for suppression and remand for further consideration.

1. *Background.* A summary of the first appeal is relevant. On February 24, 1999, a fire killed five people in a three-family home in Lynn. The defendant told the police on February 27, 1999, that she had set the fire. She also made admissions to a court officer after her arraignment on March 1. She filed a motion to suppress (original motion to suppress) her statements to police and to the court officer. After a hearing on the original motion to suppress, a judge in the Superior Court determined that the statement given by the defendant to police on February 27 must be suppressed because she was subjected to custodial interrogation and because the Commonwealth failed to prove that the defendant knowingly, intelligently, and voluntarily waived her rights under *Miranda* v. *Arizona*, 384 U.S. 436, 444-445 (1966), where the defendant's mental condition affected her ability to understand her rights and the consequences of the waiver of those rights. See *Commonwealth* v. *Hilton, supra* at 598, 607. However, the judge found that the defendant's statement to police was not the product of her mental illness, that police had not used coercion or unfair measures to obtain the statement, and that the Commonwealth had established that the statement of February 27 was made voluntarily. *Id.* at 607-608. We reversed so much of the order that suppressed the entire statement, and held that the portion of the statement made before the interrogation of the defendant became custodial should not be suppressed. *Id.* at 613, 619. We affirmed the judge's ruling

that the defendant voluntarily made her statement to police. *Id.* at 619.

The second statement considered in the original motion to suppress was made to a court officer on March 1, 1999, immediately after the defendant's arraignment. The court officer was escorting the defendant from the arraignment to the holding cell when the defendant said, "I hope he forgives me." "Excuse me?," the court officer responded. The defendant answered, "I hope my son forgives me. I could have killed my grandchildren." The court officer then questioned her about the fire, and the defendant admitted setting the fire and made a statement as to motive. The judge ruled that the quoted portion of the statements made by the defendant to the court officer were volunteered and should not be suppressed, but that subsequent admissions made in response to focused questions by the court officer should be suppressed. He concluded that the court officer was acting as a law enforcement officer, that she should have known her questions would have elicited an incriminating response, and that this questioning violated the defendant's right to counsel under the Sixth Amendment to the United States Constitution. We affirmed the judge's decision. *Id.* at 614. As stated above, we did not consider the issue of the voluntariness of this statement because the issue had not been raised in the original motion to suppress. After remand, the defendant moved to suppress the entire statement to the court officer because, she contends, it was not made voluntarily.

The parties did not present any further testimony at the hearing on the supplemental motion to suppress, and the judge relied exclusively on the testimony of the witnesses at the hearing on the original motion to suppress. In particular, he relied on the testimony of three psychiatrists. Dr. Bernice Kelly interviewed the defendant six times between March, 1999, and November, 1999. She concluded that the defendant, while confined and awaiting trial, had exhibited a significant amount of delusional, bizarre, and paranoid thinking, including seeing visions of auras around people and obtaining hallucinatory advice from an imaginary tribal council. Based on her interviews with the defendant and the results from a battery of psychological tests administered to the defendant, Dr. Kelly opined that the defendant has mild retardation, is functionally illiterate, that she experiences delusional,

bizarre, and paranoid thinking, that she suffers from schizotypal personality disorder with psychotic episodes, has a tenuous connection to reality, poor judgment, and a tendency to misinterpret events and their meanings. The judge credited this testimony in his findings on the supplemental motion to suppress.

Dr. David Rosemarin interviewed the defendant on March 7, 1999, and on October 19, 1999. He concluded that, on March 7, the defendant was suffering from delusions and from bizarre and irrational beliefs, including sensing an "attractive aura" around him and receiving advice from a tribal council of her Native American ancestors. Dr. Rosemarin also opined that the defendant suffers from mental retardation, schizophrenia, and schizotypal personality disorder characterized by magical thinking, auditory hallucinations, and fixed delusions. The judge credited this testimony in his findings.

Dr. David Swenson interviewed the defendant on March 1, 1999, the day she made the statements at issue in this appeal. At that time he was a forensic psychiatrist for the Salem and Peabody courts and the former director of the Salem-Peabody Court Clinic. On that day, the defendant told Dr. Swenson that her cell was haunted, that she was seeing spirits, and that the spirit of her father had visited her the night before. Based on his examination, Dr. Swenson concluded "there was a doubt" about the defendant's competency to stand trial. Because of that doubt, Dr. Swenson recommended that the defendant be further evaluated to determine whether she was competent to stand trial. In his findings, the judge credited this testimony.

After he credited this testimony, the judge made several findings of central importance to this appeal. First, he found that due to her mental condition the defendant failed to make a knowing, voluntary, and intelligent waiver of her Miranda rights on February 27, 1999.[1] Second, he found that the defendant was incompetent to stand trial on March 1, 1999. Third, she "remained incapable of rendering a voluntary statement" on March 1, 1999, because of her tenuous mental state three days before and six days after her March 1 statement. Finally, he concluded that

---

[1] He also made this finding on the original motion to suppress, which we affirmed on appeal. *Commonwealth* v. *Hilton*, 443 Mass. 597, 606-607 (2005).

the defendant's March 1 statement to the court officer "can be attributed largely to her debilitated condition, meaning [the statement] failed to constitute the product of rational intellect and free will, which renders [it] involuntary under the circumstances."

2. *Discussion.* The Commonwealth argues that the judge had insufficient evidence to conclude that the defendant's statement to the court officer was involuntary. The defendant, on the other hand, argues that there is sufficient evidence on which the judge could have made a finding of involuntariness, especially when one considers the totality of the evidence.

At a suppression hearing, the defendant bears the initial burden to produce evidence tending to show her statement was not voluntary. *Commonwealth* v. *Harris*, 371 Mass. 462, 471 n.3 (1976). Where, as here, she does produce such evidence, the Commonwealth must then prove beyond a reasonable doubt that the statement was voluntary. *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982). "A statement is voluntary if it is the product of a 'rational intellect' and a 'free will.' " *Commonwealth* v. *Selby*, 420 Mass. 656, 662 (1995), quoting *Commonwealth* v. *Davis*, 403 Mass. 575, 581 (1988). To determine whether a defendant made her statement voluntarily, a judge examines whether, "in light of the totality of the circumstances . . . the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act." *Id.* at 663. Under the "totality of the circumstances" test, we consider all of the relevant circumstances surrounding the statement and the individual characteristics and conduct of the defendant. *Commonwealth* v. *Parker*, 402 Mass. 333, 340 (1988), *S.C.*, 412 Mass. 353 (1992), and 420 Mass. 242 (1995). Relevant factors include, but are not limited to, the "conduct of the defendant, the defendant's age, education, intelligence and emotional stability, . . . physical and mental condition, . . . and the details of the interrogation, including the recitation of Miranda warnings."[2] *Commonwealth* v. *Mandile*, 397 Mass. 410, 413 (1986).

In reviewing a judge's ruling on a motion to suppress, we

---

[2]The judge found that the court officer did not coerce the defendant. See *Commonwealth* v. *Mahnke*, 368 Mass. 662, 683 (1975), cert. denied, 425 U.S. 959 (1976).

give substantial deference to the judge's ultimate findings, and we accept the judge's subsidiary findings unless they are clearly erroneous. *Commonwealth* v. *Cunningham*, 405 Mass. 646, 655 (1989), citing *Commonwealth* v. *Tavares*, *supra* at 144-145. A finding is clearly erroneous if it is not supported by the evidence, or when the reviewing court, on the entire evidence, is left with the firm conviction that a mistake has been committed. *Id.* at 145, 156.

The judge relied expressly on three subsidiary findings to support the ultimate conclusion that on March 1, 1999, the defendant could not make a voluntary statement due to her debilitated mental condition. Although cited above, we repeat them. First (and implicitly because of her mental retardation and mental illness, see *Commonwealth* v. *Hilton*, 443 Mass. 597, 606-607 [2005]), the defendant did not make a knowing, voluntary, and intelligent waiver of her Miranda rights prior to making a statement to the police on February 27, 1999. Second, the defendant was incompetent to stand trial. Third, the defendant "remained incapable of rendering a voluntary statement" because of her tenuous mental state three days before and six days after her March 1 statement. We consider each of these findings in turn.

a. *Waiver of Miranda rights.* The judge could consider the defendant's mental condition on February 27, 1999 (and specifically, her inability due to mental retardation and mental illness to make a knowing, voluntary, and intelligent waiver of her Miranda rights) relative to her mental condition on March 1, 1999 (and specifically, her ability to make a voluntary statement). However, a finding that the defendant was unable to make a knowing, voluntary, and intelligent waiver of her Miranda rights is not enough, standing alone, to support the finding that her statements were involuntary. *Commonwealth* v. *Hilton, supra* at 607-608.

b. *Competency to stand trial.* The judge erred in finding that the defendant was incompetent to stand trial. In his memorandum of decision, the judge wrote that Dr. Swenson concluded "there was a doubt" as to the defendant's competency to stand trial.[3] In the next sentence, the judge wrote that the defendant "seem-

---

[3] "The test for determining the competency of an accused person to stand trial . . . [is] 'whether [the defendant] has sufficient present ability to consult

ingly remained incompetent to stand trial," apparently operating under the assumption that when Dr. Swenson concluded he had a "doubt" about the defendant's competency, he was in effect concluding that she was or seemingly remained incompetent. That assumption is erroneous.[4] Dr. Swenson did not conclude that the defendant was or seemingly remained incompetent. Rather, his statement was no more than an expression of the need for a more in-depth examination, specifically, under the provisions of G. L. c. 123, § 15 (b). Dr. Swenson adopted the meaning of the word "doubt" as used in the context of G. L. c. 123, § 15 (a) ("Whenever a court of competent jurisdiction doubts whether a defendant in a criminal case is competent to stand trial," examination may be ordered [emphasis added]). That context provided the basis for Dr. Swenson's recommendation for a further examination under § 15 (b).[5]

The judge also appears to have misconstrued the import of Dr. Swenson's use of the word "doubt" because of a misunderstanding as to the Commonwealth's burden of proof on the question of competency to stand trial. The judge stated, "the bases for reasonable doubt concerning a defendant's competency to stand trial remain probative on the issue of making a voluntary statement" (emphasis added). The judge appears to be saying that the reasonable doubt that flowed from the determination of incompetency could be carried over to the issue of voluntariness. Although issues concerning competency may be relevant to voluntariness, the judge's statement suggests, incorrectly, that the Commonwealth bears the burden beyond a reasonable doubt. The Commonwealth's burden of proof in a competency proceeding is by a preponderance of the evidence. Commonwealth v.

with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.' " Commonwealth v. Hill, 375 Mass. 50, 52 (1978), quoting Dusky v. United States, 362 U.S. 402, 402 (1960).

[4]When deciding the original motion to suppress, the judge made the same mistake when he stated, "Dr. Swenson . . . concluded that the defendant lacked sufficient ability to understand the court proceedings and to consult with her lawyer . . . ." Dr. Swenson did not make that conclusion. Rather, he concluded that because there was a "doubt," further examination was warranted.

[5]Later, Dr. Tali Walters conducted a further examination of the defendant under G. L. c. 123, § 15 (b), and concluded that the defendant was competent to stand trial.

*Crowley*, 393 Mass. 393, 402 (1984). Moreover, there had been no determination of incompetency.

The erroneous finding of incompetency to stand trial cannot support the judge's ultimate finding of involuntariness.

c. *The defendant "remained incapable" on March 1.* From the fact that the defendant suffered delusions and bizarre, irrational beliefs on March 7, 1999, and from the fact that the defendant did not waive her Miranda rights on February 27, the judge found that the defendant "maintained a tenuous mental state" on those days and he inferred that the defendant "*remained incapable*" of rendering a voluntary statement on March 1 (emphasis added). Because the judge never found that the defendant was incapable of making a voluntary statement prior to March 1, it is not reasonable to infer that she "remained" incapable on March 1. Moreover, the judge found in his decision on the original motion to suppress that the defendant's February 27 statement to police was voluntary.

The judge's erroneous finding that the defendant "remained" incapable of making an involuntary statement cannot support the judge's ultimate finding of involuntariness.

3. *Conclusion.* The judge's subsidiary findings do not provide adequate support for his ultimate finding of involuntariness. The order for suppression must be vacated and the matter remanded yet again. Contrary to the Commonwealth's argument, there is evidence from which a judge could conclude that the statement was involuntary. There also is evidence from which a judge could conclude that the statement was voluntary. Whatever determination is made must be supported by evidence in the record that the judge has credited or by any reasonable inference that may be drawn from such evidence. A finding of voluntariness, of course, "must appear from the record with unmistakable clarity." *Commonwealth* v. *Tavares*, 385 Mass. 140, 152 (1982), quoting *Sims* v. *Georgia*, 385 U.S. 538, 544 (1967).

Because the indictments in this case were returned in March, 1999, the determination of the supplemental motion to suppress must be given priority. Assuming the defendant is competent, any further hearing on the supplemental motion to suppress must take place as expeditiously as possible, and the judge's written decision thereon must be submitted within thirty days thereafter or

within thirty days of the parties' joint statement that no further hearing is requested.

*So ordered.*