## COMMONWEALTH vs. EDWIN MONTOYA.

Middlesex. November 5, 2012. - March 14, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Controlled Substances. Constitutional Law,* Confrontation of witnesses, Harmless error, Search and seizure, Probable cause, Admissions and confessions. *Error, Harmless. Practice, Criminal,* Confrontation of witnesses, Harmless error, Admissions and confessions, Voluntariness of statement. *Evidence,* Certificate of drug analysis, Admissions and confessions, Voluntariness of statement. *Search and Seizure,* Probable cause, Motor vehicle. *Probable Cause. Arrest.*

At the trial of drug-related charges, including a charge of trafficking in powder cocaine in an amount between twenty-eight and one hundred grams, the improper admission of certificates of chemical analysis establishing the weight and identity of the substance in question, without the testimony of the analysts who prepared and signed the certificates, was not harmless beyond a reasonable doubt, where, with regard to the identity of the substance, the evidence at trial was not so strong that the certificates were merely cumulative [571-573]; and where, with regard to the weight of the evidence, the jurors, although having the opportunity to handle and examine the bags of cocaine in evidence, would not have been able to determine the weight of such small quantities with the requisite degree of precision, and the evidence otherwise was not overwhelming [573-576].

A Superior Court judge did not err in denying a criminal defendant's pretrial motion to suppress evidence seized from a motor vehicle following a police stop, where the evidence indicated clearly that the police officer, having witnessed the defendant transfer an object to the driver of another vehicle through the driver's side window in an area known for narcotics transactions, had probable cause to arrest the defendant when he activated his lights to stop the vehicle driven by the defendant [576]; further, the defendant failed to produce evidence tending to show that the procedures accompanying his arrest constituted threats and confinement that overbore his will and thus rendered his subsequent statements to the police involuntary [576-579].

INDICTMENTS found and returned in the Superior Court Department on November 9, 2006.

A pretrial motion to suppress evidence was heard by *Christopher J. Muse,* J.; the cases were tried before *Dennis J. Curran,*

J.; and a motion for new trial, filed on February 4, 2010, was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul C. Brennan* for the defendant.

*Paul Trifiletti*, Assistant District Attorney (*Kevin J. Curtin*, Assistant District Attorney, with him) for the Commonwealth.

DUFFLY, J. During the defendant's trial in the Superior Court on drug-related charges that included trafficking in cocaine over twenty-eight grams, certificates of chemical analysis establishing the weight and identity of the substance alleged to have been in the defendant's possession (drug certificates) were erroneously admitted in evidence. At issue in this case is whether the improper admission of those drug certificates was harmless beyond a reasonable doubt, where jurors had the opportunity to handle and examine the bags of powder cocaine in evidence. Because we conclude that unaided jurors would not have been able to determine the weight of such small quantities with the requisite degree of precision, and that the evidence otherwise was not overwhelming, the error in admission of the drug certificates was not harmless beyond a reasonable doubt. Therefore, the defendant's convictions must be vacated.

*Background.* The defendant was indicted on charges of distribution of cocaine, G. L. c. 94C, § 32A (*c*); a drug violation within a school zone, G. L. c. 94C, § 32J; trafficking in cocaine over twenty-eight grams and less than one hundred grams, G. L. c. 94C, § 32E (*b*); and conspiracy to violate the drug laws, G. L. c. 94C, § 40. The charges stemmed from the defendant's arrest after State troopers, conducting surveillance in the parking lot of a grocery store, observed the defendant hand something through the window of his vehicle to the driver of a pickup truck. One trooper seized a single, small bag of suspected cocaine from the individual in the truck; another trooper conducted a search of the automobile that the defendant had been driving, and found twenty small bags of suspected cocaine.

The defendant moved to suppress the items found in the vehicle he was driving as well as his postarrest statements to police. A Superior Court judge denied the motion, concluding that the police stop and arrest of the defendant were supported

by probable cause and that the defendant's statements to police had been made voluntarily and intelligently.

At trial, the Commonwealth introduced two drug certificates from the State police drug laboratory. These certificates were admitted in part to establish that the bag recovered from the buyer contained 2.68 grams of cocaine and that the bags recovered from the defendant's vehicle contained a total of 39.74 grams of cocaine. Neither of the chemical analysts who prepared the drug certificates testified. The defendant did not object to the admission. The Commonwealth dismissed the indictment for conspiracy before the case went to the jury. The defendant was convicted on the other three indictments.

The defendant appealed from the denial of his motion to suppress and from his convictions. Five months before his appeal was docketed in the Appeals Court, the United States Supreme Court issued its decision in *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305 (2009) (*Melendez-Diaz*), in which the Court overturned earlier Massachusetts case law and held that a drug analyst's certificate is testimonial and cannot be admitted at trial unless a defendant has the opportunity to cross-examine the person who conducted the analysis on which the certificate was based. The defendant thereafter filed a motion for a new trial in the Superior Court, in which he argued that the admission of the drug certificates violated his right to confrontation guaranteed by the Sixth Amendment to the United States Constitution and that his trial counsel was ineffective for not having objected to their admission.[1] The judge denied the motion, concluding that admission of the drug certificates was harmless beyond a reasonable doubt. The defendant's appeal from that denial was consolidated with his direct appeal, and we transferred the case to this court on our own motion.

Before us, the defendant raises four claims of error. He contends that (1) the admission of drug certificates absent testimony of the analysts who performed the tests and certified the results violated his right under the Sixth Amendment to confront

---

[1]The defendant also argues that his trial counsel was ineffective for failing to object to the admission of an unredacted label on an evidence bag. Because of the result we reach, and given that the error is unlikely to recur at any new trial, we need not address this argument.

the witnesses against him; (2) the judge erred in denying his motion to suppress evidence seized from his vehicle because police did not have probable cause to arrest him; (3) his statements to police should have been suppressed because they were not voluntary; and (4) his trial counsel was ineffective.

*Facts.* The jury could have found the following. At approximately 1 P.M. on August 8, 2006, State troopers Bradford Porter and Jeffrey Saunders were conducting surveillance in the parking lot of a grocery store in the city of Everett. Police frequently had observed narcotics sales in that area. The two troopers were in separate, unmarked vehicles. Porter saw a white Ford pickup truck and a brown Toyota sedan parked with the drivers' windows facing one another and the drivers "hanging out of the windows and engaged in some form of conversation." Saunders observed the driver of the Toyota pass something to the driver of the pickup truck. He radioed this information to Porter and followed the Toyota as it left the parking lot.

Porter approached the pickup truck and saw the driver heating a substance on a spoon and inhaling the smoke through a glass tube. Porter radioed Saunders, at which point Saunders activated his lights, stopped the Toyota, and subsequently arrested the defendant. During the arrest, Saunders seized $1,380 in cash from the defendant's pants pocket. The defendant was the only occupant of the Toyota, which was towed to the State police barracks. The defendant was placed in a holding cell at the State police barracks, and was given Miranda warnings.

A drug detection canine was brought in and "got all excited" while sniffing the exterior of the Toyota's front passenger door, an indication that there were narcotics inside. The trooper who handled the canine testified that narcotics detection canines are trained to detect the odors of "marijuana, cocaine, heroin, and methamphetamine."

Lieutenant Dennis L. Brooks of the State police told the defendant that a narcotics canine had alerted to the scent of narcotics in the vehicle, and that police suspected it contained a "hide." According to Brooks, "I asked him if he would have any information because the car wasn't registered to him, and I don't like to destroy people's property based on an alert from the dog if there's a reason — if I could find the hide." The

defendant informed Brooks that there was an electronically activated "hide" in the vehicle and described the series of steps required to open it. The troopers discovered twenty plastic bags containing what appeared to be cocaine in the "hide" under the front passenger seat. Brooks testified that the defendant told police he recently had begun selling cocaine because he had been injured in a car accident, was not working, and had credit card debts.

Detective James Hyde of the Somerville police department, who testified as an expert in the field of narcotics investigation, stated that cocaine is often sold as an "eight ball," that is, one-eighth of an ounce (approximately 3.5 grams). Hyde examined the small bag recovered from the buyer and the bags recovered from the defendant's vehicle and opined that they appeared to contain powder cocaine. He also examined the drug certificate concerning the substance recovered from the buyer and gave his opinion that 2.68 grams was a "funny weight," and the bag had likely been an "eight ball" at sale.

The Commonwealth introduced two certificates prepared by the State police drug laboratory. The analysts who prepared the drug certificates did not testify, and nothing in the record indicates that defense counsel had had any prior opportunity to cross-examine them. According to the drug certificates, the powder in the bag recovered from the buyer and the powder in the bags recovered from the "hide" each was thirty per cent pure cocaine, diluted with an infant laxative. Hyde testified that infant laxative is frequently used to dilute pure cocaine, and thirty per cent purity is not unusual for drugs sold at street level.[2] He said that, in 2006, the price of an "eight ball" of powder cocaine in Everett was between $150 and $180.

The defendant, who testified in his own defense, said that a person he had met at a party a month earlier, and whom he could identify only as "Andres," had lent him an automobile so

---

[2]The relative purity of a mixture is not material to the determination of the over-all weight of the drugs. The total weight of the mixture determines the offense for which the defendant may be convicted. *Commonwealth* v. *Connolly*, 454 Mass. 808, 832 n.27 (2009). See *Commonwealth* v. *Verde*, 444 Mass. 279, 284 n.5 (2005), abrogated on other grounds, *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305 (2009); *Commonwealth* v. *Beverly*, 389 Mass. 866, 868-869 (1983).

that he could go to a shopping mall to buy an engagement ring for his girl friend.[3] Andres asked the defendant to stop at a grocery store on the way to the mall to pick up money from a man in a white pickup truck. The defendant had seen Andres operate the "hide" previously, but did not know there were drugs in the "hide" on that day. The defendant testified that $1,230 of the money in his pocket at the time of his arrest was from his paycheck from a construction company and was intended to finance his jewelry purchase; he did not know how much money the man in the pickup truck had given him. On cross-examination, the defendant responded affirmatively to the question whether the substance recovered from the vehicle was cocaine, but denied being a drug dealer and denied knowing that there was cocaine in the "hide."

*Discussion.* 1. *Admission of drug certificates.* We agree with the defendant's assertion that admission of the drug certificates, without the testimony of the two analysts who prepared and signed them, violated the defendant's Sixth Amendment right to confront the witnesses against him, and that the judge erred in allowing their admission. As the United States Supreme Court held in *Melendez-Diaz, supra* at 310-311, analysts' affidavits are "testimonial statements," and "[a]bsent a showing that the analysts were unavailable to testify at trial and that [a defendant] had a prior opportunity to cross-examine them," a defendant has a right to confront the analysts at trial.

Although the defendant was tried in 2008, before the Court's decision in *Melendez-Diaz* issued, we apply the rule in *Melendez-Diaz* to this case because the defendant has not exhausted his direct appeal, and consider whether the error was harmless beyond a reasonable doubt. See *Commonwealth* v. *Vasquez*, 456 Mass. 350, 352 (2010). See also *Commonwealth* v. *Libran*, 405 Mass. 634, 645 (1989), quoting *Commonwealth* v. *Bellamy*, 391 Mass. 511, 515 (1984) (new rules of criminal law are applied to cases "on direct appeal or as to which time for direct appeal has not expired when the new rule is announced").

When analyzing whether an error was harmless beyond a

---

[3]The defendant stipulated that the automobile was registered to a named individual who was not the defendant and whose first name was other than Andres; no further evidence about its registered owner was introduced.

reasonable doubt, we consider whether, based on the "totality of the record before us, weighing the properly admitted and the improperly admitted evidence together, we are satisfied beyond a reasonable doubt that the tainted evidence did not have an effect on the jury and did not contribute to the jury's verdicts." *Commonwealth* v. *Tyree,* 455 Mass. 676, 701 (2010). It is not enough that "other, properly admitted evidence was 'sufficient' to convict the defendant or that the inadmissible evidence was 'consistent' with the admissible evidence." *Id.* An error is harmless beyond a reasonable doubt only when "other properly admitted evidence of guilt is 'overwhelming,' in the sense that it is 'so powerful as to "nullify any effect" that the improperly admitted evidence might have had on the fact finder or the findings.' " *Commonwealth* v. *Vasquez, supra* at 362, quoting *Commonwealth* v. *Tyree, supra* at 704 n.44.

In conducting this inquiry, we have relied on a number of factors, including "the importance of the evidence in the prosecution's case; the relationship between the evidence and the premise of the defense; who introduced the issue at trial; the frequency of the reference; whether the erroneously admitted evidence was merely cumulative of properly admitted evidence; the availability or effect of curative instructions; and the weight or quantum of evidence of guilt." *Commonwealth* v. *Tyree, supra* at 701, quoting *Commonwealth* v. *Dagraca,* 447 Mass. 546, 553 (2006). See *Commonwealth* v. *Mendes,* 463 Mass. 353, 359 (2012)

a. *Identity of substance.* The properly admitted evidence at trial, taken together, could have allowed a jury to infer that the substance recovered from the defendant's vehicle and from the buyer was cocaine. That evidence included the defendant's unrecorded statement to police following his arrest in which he admitted to selling cocaine; the identification of the odor of a narcotic on the Toyota by a drug detection canine; and testimony by a police detective, who testified as an expert on drug distribution, that the substance recovered from the vehicle driven by the defendant "appeared to be" cocaine, that the packaging was typical of cocaine intended for distribution, and that the substance was secreted in a complex electronic "hide" in the automobile driven by the defendant.

However, this evidence was not so overwhelming that it would have "nullified the effect [on the jury] of the admission of the drug certificates" on the subject of the identity and weight of the substances, central elements of the Commonwealth's case. See *Commonwealth* v. *Mendes, supra* at 360. The Commonwealth introduced the drug certificates and bore the burden of proving that the substance in the bags was cocaine. In his questioning, the prosecutor repeatedly directed witnesses' attention to the drug certificates and, during closing argument, made reference to the identity and precise weight of the drugs as set forth on the drug certificates. Other evidence of the identity of the substance in the bags was not so strong that the certificates were merely cumulative of that which was properly admitted. See *Commonwealth* v. *Nelson,* 460 Mass. 564, 577 (2011); *Commonwealth* v. *Tyree, supra* at 704; *Commonwealth* v. *Dawson,* 399 Mass. 465, 467 (1987). Compare *Commonwealth* v. *Mendes, supra* at 359-360.[4]

Because we are unable to conclude beyond a reasonable doubt that the erroneous admission of the drug certificates had no effect on the jury and did not contribute to their verdicts, the defendant's convictions must be vacated.

b. *Weight of substance.* The erroneous admission of the drug certificates also was not harmless beyond a reasonable doubt as to the weight of the substance. The defendant was charged with trafficking in between twenty-eight and one hundred grams of cocaine (between approximately one and 3.5 ounces). One of the drug certificates attests to the contents of the twenty small bags found in the defendant's vehicle as together weighing

---

[4]Even if the jury credited State police Lieutenant Dennis L. Brooks's testimony that the defendant had admitted to dealing in cocaine, the defendant's statement did not function as did the codefendants' trial testimony in *Commonwealth* v. *Mendes,* 463 Mass. 353, 359-360 (2012). The defendants in that case testified to having used the same drugs found by police and conceded the identity of the substances, as part of a defense strategy to show that they possessed the drugs for personal use rather than for distribution. *Id.* at 361 nn.5 & 6. Here, there was no evidence presented that the defendant was an experienced drug user who had used the type of drugs at issue and could therefore identify the substance as cocaine. See *Commonwealth* v. *Dawson,* 399 Mass. 465, 467 (1987) (experienced drug users are competent to identify particular substance they saw and used).

39.74 grams.[5] In his decision on the defendant's motion for a new trial, the judge, relying on *Commonwealth* v. *Connolly*, 454 Mass. 808, 832 (2009) (*Connolly*), ruled that jurors are presumptively capable of determining the weights of objects.

In *Connolly*, the Commonwealth introduced a ball of solid cocaine that "looked 'like a baked potato' [and] was 'bigger than a baseball.' " *Id.* at 831. According to the accompanying drug certificate, the cocaine weighed 124.31 grams (approximately 4.4 ounces). *Id.* We held that jurors were capable of determining that a single "large . . . solid" mass comparable in size to familiar objects weighed more than one hundred grams (which is equivalent to approximately 3.5 ounces). *Id.* at 832, citing *Commonwealth* v. *Sturtivant*, 117 Mass. 122, 133 (1875) (lay witnesses competent to testify to opinion on "size, color, weight of objects").

Here, by contrast, the drugs introduced in evidence and available to the jury in the jury room were packaged in twenty individual bags.[6] The difference between 27.9 grams, which would be insufficient for conviction of the offense charged, and 39.74 grams, the actual weight according to the drug certificate, is 11.84 grams, which is equivalent to slightly more than the weight of four pennies. See Alschuler, The Failure of Sentencing Guidelines: A Plea for Less Aggregation, 58 U. Chi. L. Rev. 901, 937 (1991) (five grams is weight of two pennies or five paper clips).

That jurors had the opportunity to handle this evidence in the jury room, without instruments or any objects of known weight for comparison, does not render the admission of the drug certificates harmless beyond a reasonable doubt. See, e.g., *Commonwealth* v. *Rodriguez*, 75 Mass. App. Ct. 235, 242 (2009) (where conviction was for trafficking one hundred to two hundred grams of cocaine, and nearly one hundred fifty grams in several containers was introduced in evidence, determining suf-

---

[5]The certificate did not reflect the weight of the individual bags found in the vehicle or whether they were all of equal weight.

[6]The judge allowed the jury to open an evidence bag and an enclosed heat-sealed bag in order to handle the twenty smaller bags containing the substance. However, the bags alone presumably added nontrivial weight relative to the total combined weight of the substance.

ficiency of weight without certificates "would involve too much guesswork on too close a question in the[] circumstances"). See also *Commonwealth* v. *Rivera,* 76 Mass. App. Ct. 67, 70-71 (2009) (single bag was within five grams of minimum weight charged; jurors could not determine weight by examination alone, "particularly to the accuracy required in borderline cases"); *Commonwealth* v. *DePina,* 75 Mass. App. Ct. 842, 852 (2009) (where substance weighed .24 grams over minimum weight charged, "the jury could not feasibly distinguish the critical fraction of a gram separating guilt from innocence of the trafficking charge by observation of the exhibits in the deliberation room").

Additional evidence did not shed a brighter light on the weight of the substances and appears instead to have confused the jury. A note submitted by the jurors after three hours of deliberation requested information about the weight of the individual bags in the group of twenty recovered from the defendant's vehicle and permission to remove them from the heat-sealed outer evidence bag.[7] The Commonwealth argues in its brief that, based on Hyde's testimony that the cocaine recovered from the buyer was a little less than an "eight ball" (one-eighth of an ounce or 3.5 grams), the jury could have determined that each of the twenty bags recovered from the defendant's vehicle was also an "eight ball." However, in addition to testifying that cocaine is often packaged as an "eight ball," Hyde also testified that cocaine may be packaged in a variety of smaller quantities for sale. Moreover, his opinion that the quantity recovered from the buyer had likely been an "eight ball" at sale was in part based on the improperly admitted certificate that said that the contents of that bag weighed 2.68 grams, which he examined as he

---

[7]The jury's note asked:

> "(1) Is there any way to get an individual weight of the 20 bags in exhibit 5? (2) Are they all approximately the same weight? (3) Can we open the bag? (exhibit 5) (4) Evidence states exhibit 5 weighs 39.74 g but the package says 43.6 g. Which is correct?"

Writing on the outer plastic bag containing the twenty small bags recovered from the defendant's vehicle included the number 43.6. In response to the first, second, and fourth questions, the judge told the jurors, "You are asking me to either comment on some of the evidence or to interpret some of the evidence. By law I cannot do that."

testified.[8] On the evidence presented, therefore, the error in admission of the analysts' certificates as to the weight of the substance was not harmless beyond a reasonable doubt.

2. *Motion to suppress.* The defendant claims also that his motion to suppress was wrongly denied. In reviewing a ruling on a motion to suppress, we accept the judge's findings of fact absent clear error but conduct an independent review of his ultimate findings and conclusions of law. *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004). We conclude that there was no error in the denial of the motion.

a. *Probable cause.* The defendant argues that his motion to suppress the evidence seized from the Toyota should have been allowed because police did not have probable cause to arrest him at the point when Saunders activated his lights to stop the defendant's vehicle. Evidence introduced at the hearing on the motion to suppress, which was substantially similar to that introduced at trial, indicates clearly that police had probable cause to arrest the defendant at that point. Saunders, the arresting officer and an experienced narcotics investigator, had observed the defendant transfer an object to the driver of another vehicle through the driver's side window in an area known for narcotics transactions. At the time he activated his lights, Saunders had been informed that the transferee was in possession of drugs. See *Commonwealth* v. *Santaliz*, 413 Mass. 238, 242 (1992) (probable cause based on "the whole 'silent movie' "). We impute also to Saunders the knowledge of the buyer's admission to Porter that he had just purchased the drugs, regardless of whether that admission was immediately communicated by police radio. See *Commonwealth* v. *Roland R.*, 448 Mass. 278, 285 (2007), quoting *Commonwealth* v. *Boston*, 53 Mass. App. Ct. 201, 206 (2001) (in assessing probable cause or reasonable suspicion, "the knowledge of each officer is treated as the common knowledge of all officers").[9]

b. *Voluntariness of statements.* The defendant also argues

---

[8]Had the twenty bags recovered from the defendant's vehicle all been "eight balls," as suggested by Hyde's testimony, the package would have weighed approximately seventy grams, nearly twice the weight listed on the drug certificate.

[9]The defendant also argues that probable cause may not be based in part on the buyer's statement because police had not established the buyer's reliability

that, although he was given Miranda warnings and signed a waiver of his Miranda rights, considering the "totality of the circumstances," his statements to police were not voluntary. The initial burden is on the defendant to produce evidence tending to show that his statement was involuntary; if he satisfies this burden, the Commonwealth is required to prove beyond a reasonable doubt that the statement was voluntarily made. See *Commonwealth* v. *Hilton*, 450 Mass. 173, 177 (2007).

Factors suggesting that a statement was not voluntary include, but are not limited to, whether the defendant was offered "promises or other inducements"; the defendant's conduct, age, education, intelligence, and emotional stability; his experience with and in the criminal justice system; his physical and mental condition during questioning; whether he initiated any negotiation for a "deal"; the general conduct of the interrogation; and whether he received Miranda warnings. *Commonwealth* v. *Tremblay*, 460 Mass. 199, 207 (2011), quoting *Commonwealth* v. *Mandile*, 397 Mass. 410, 413 (1986). "The presence of one or more factors suggesting a statement may have been made involuntarily is not always sufficient to render the statements involuntary." *Commonwealth* v. *Selby*, 420 Mass. 656, 664 (1995).

The motion judge found that the defendant did not appear to be under the influence of alcohol, medication, or any substance, and was responsive to questions; he did not show indications of "emotional difficulties" other than nervousness or concern. He was handcuffed to the wall in a small booking room. The Miranda warning form was read to him, and he signed it. Following

as an informant. When the statements of an unknown informant form part of the grounds for probable cause or reasonable suspicion, the Commonwealth must establish the informant's basis of knowledge and his reliability. *Commonwealth* v. *Upton*, 394 Mass. 363, 374-375 (1985) (adopting test set out in *Aguilar* v. *Texas*, 378 U.S. 108 [1964], and *Spinelli* v. *United States*, 393 U.S. 410 [1969]). Here, the buyer's credibility was bolstered by the troopers' personal observations, which corroborated details of his statement. See *Commonwealth* v. *Warren*, 418 Mass. 86, 89 (1994). The troopers had two other important indicia of the buyer's reliability. The buyer was face-to-face with a trooper when he made the statements, about to be arrested for drug possession, and he thus had no expectation of continued anonymity. See *Commonwealth* v. *Stoute*, 422 Mass. 782, 790-791 (1996); *Commonwealth* v. *Burt*, 393 Mass. 703, 707-710 (1985). He also admitted to participation in illegal activity. See *Commonwealth* v. *Vynorius*, 369 Mass. 17, 19 n.4, 21 (1975).

booking, he was removed from the cell and Saunders told him that he was in "big trouble"; the defendant "was either directly or indirectly asked to be cooperative."

Brooks again administered Miranda warnings and then spoke with the defendant for less than five minutes, informing him that a drug detection canine was "alerting" to the Toyota. The defendant told Brooks that there was a "hide" or "clabbo" in the vehicle and explained how to open it. Brooks left, recovered twenty bags of white powder from the "hide," and returned to speak to the defendant further. After once again being given Miranda warnings, the defendant disclosed that he had been recruited by an "unknown individual" three days before his arrest and had been provided the Toyota sedan, cellular telephones, and drugs to sell, along with a client list. During this interview, which was between twenty and twenty-five minutes in length, the defendant's "demeanor was unremarkable and . . . his statements were given to [Brooks] in a responsive way, . . . he appeared to understand both the questions and appeared to be able to answer[, and there was] no indication of the defendant being under the influence of any alcohol, medication or controlled substance."

The defendant characterizes the procedures accompanying his arrest as threats and confinement that overbore his will. He points to Saunders's statement that he was being charged with a serious crime; the fact that the booking room was small and he remained handcuffed until questioning began; and Brooks's statement that a narcotics detection dog had reacted to the exterior of the Toyota, which might result in officers damaging the vehicle in the course of searching for the hidden narcotics. These are not circumstances that suffice to establish that a statement made by a defendant during an interrogation was involuntary. Compare *Commonwealth* v. *Souza*, 428 Mass. 478, 483 (1998) (statement not involuntary where defendant was questioned for approximately three and one-half hours by multiple officers while in his underwear, covered by blanket, handcuffed to bar in small room); *Commonwealth* v. *Raymond*, 424 Mass. 382, 395-396 (1997) (statement not involuntary where officers urged defendant to tell his side of story, and threatened to charge his mother as accessory). Nor does the defendant sug-

gest that police used lies or trickery, or that he was unusually vulnerable. See *Commonwealth* v. *Tremblay, supra.*[10]

*Conclusion.* Because the admission of the drug certificates was not harmless beyond a reasonable doubt, the defendant's convictions are vacated, the verdicts are set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*

---

[10]Because of the result we reach on the issue of admission of the drug certificates, we need not reach the defendant's final claim of error, that his counsel was ineffective for failing to object to their admission. See *Commonwealth* v. *Hoppin,* 387 Mass. 25, 32 (1982).