NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-1056

COMMONWEALTH

vs.

AMARI P. MORGAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial, the defendant, Amari P. Morgan, was convicted of carrying a firearm without a license and carrying a loaded firearm without a license.  The charges stemmed from the discovery of a loaded firearm in the defendant's jacket during a patfrisk following a motor vehicle stop and exit order.  Prior to trial, the defendant filed a motion to suppress (motion) the firearm, ammunition, and statements made to police at the time of his arrest.  Following an evidentiary hearing, the judge denied the motion.  On appeal, the defendant argues that the judge erred because the police did not have reasonable suspicion to conduct a patfrisk.  We affirm.

Background.  We recite the facts as found by the motion judge, supplemented by undisputed testimony.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).  On May 4, 2022, at around 1 A.M., Boston police Officer Edwin Centeio pulled over a car driven by the defendant, who was the only occupant of the car, for failing to stop at a red light.  As Centeio approached, he saw the defendant "reaching into the glove compartment." Centeio "had not asked the defendant for any documents and was concerned by the hurried manner of the defendant's reaching." Centeio asked the defendant what he was reaching for and he did not respond or look at the officer.  Centeio then told the defendant to "'stop reaching' three or four times," but the defendant did not comply.

Officer Jose[1] Diaz was on patrol in the area and came upon the traffic stop.  He pulled over to "monitor the situation." Officers Orville Mason and Charles Zukowski, who were in a patrol wagon, also saw the traffic stop and "idled next to the defendant's stopped car."  Mason got out of the police cruiser after "hearing Centeio say, 'stop, stop,' two or three times, . . . and saw the defendant leaning into the passenger['s] side of the [car] with his hand toward the glove box."  Mason

---

[1] The motion judge's findings provide that Diaz's first name is Juan, but as is our custom we spell the officer's name as it appears in the motion and trial transcripts.

believed that the defendant "was armed and might pose a danger to officers," because "in the past [he] recovered firearms when a person in a stopped car continued to move despite police demands to cease."

Mason opened the driver's side door and told the defendant to step out. "The defendant [then] 'tensed up' and pulled his hands towards his body."[2] Mason and Centeio grabbed the defendant's arms and pulled him out of the driver's seat. Thereafter, "a struggle ensued."

As the motion judge found, the defendant "resisted police efforts to control his arms and hands," and the officers "took [the defendant] to the ground." Diaz was concerned that the defendant was armed because he "had recovered weapons in the past . . . from defendants who physically resisted police." After the defendant was handcuffed, "Diaz saw that the defendant's jacket pocket was weighted with a heavy object"; he

---

[2] At the motion hearing, there were some minor discrepancies among the officers about the moment in which the defendant "tensed up." Mason testified that he asked the defendant to step out of the car and held onto the defendant's wrist, and "once [the defendant] had his first feet out, he started [to] tense up his wrist . . . [and] pull it away." Centeio testified that after the car door was opened and the defendant was asked to get out of the car, the defendant "was nonverbal and didn't comply . . . and [Mason and Centeio] grabbed the driver . . . and guided him out [of] the [car]." Centeio testified that "as [they] attempted to secure [the defendant's] arms, he began to tense up." None of these differences affect our analysis.

3

then "put his hands on the outside of the jacket and felt what he immediately recognized as a firearm." The "[o]fficers seized the firearm and demanded the defendant's license to carry." The defendant "responded by saying that he did not have one." The defendant was given Miranda warnings and transported to the police station. See Miranda v. Arizona, 384 U.S. 436, 467-468 (1966).[3]

Discussion. The defendant contends that the patfrisk was not justified and that the motion judge relied on "clearly erroneous factual findings about the conduct of the exit order." "When reviewing a ruling on a motion to suppress, we accept the

---

[3] Centeio, Mason, and Diaz testified at the motion hearing. The prosecutor introduced video footage from Centeio's body-worn camera; however, the first thirty seconds of the camera footage (referred to as the "buffer segment" and does not have sound) that may have shown "what occurred before the defendant was removed from the car," was missing. The motion judge "invited the parties to supplement the record with that buffer segment." The prosecutor submitted the video footage from Mason's and Diaz's body-worn cameras, but there was "no explanation of why the [thirty] second video-only buffer from Centeio's [body-worn camera] ha[d] not been provided." The judge noted that Mason's camera started recording after "the defendant [was] out of the car and already on the ground," and Diaz's camera started recording when he ran from his cruiser to the struggle with the defendant, before he assisted in taking the defendant to the ground The motion judge did not credit the report by the police video evidence unit officer that the missing video footage could not be retrieved and found "its absence . . . troubling." He credited "Mason's and Diaz's testimony in full," and found that "Centeio's testimony [was] consistent with Mason's on the critical facts of the defendant's reaching, turning, and refusal to comply with police demands that he not do so."

4

judge's subsidiary findings of fact absent clear error but conduct an independent review of his ultimate findings and conclusions of law" (quotation and citation omitted). Commonwealth v. Almonor, 482 Mass. 35, 40 (2019). We "leave to the [motion] judge the responsibility of determining the weight and credibility to be given . . . testimony presented at the motion hearing." Commonwealth v. Meneus, 476 Mass. 231, 234 (2017), quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004).

1. The patfrisk. The defendant does not challenge the exit order, but argues that his conduct was not "concerning enough" to "give rise to reasonable suspicion that [he] was armed and dangerous." Put differently, he claims that the police did not have reasonable suspicion to conduct a patfrisk. "In the context of a lawful motor vehicle stop, [a] patfrisk is permissible only where an officer has reasonable suspicion that the stopped individual may be armed and dangerous" (quotation and citation omitted). Commonwealth v. Crowder, 495 Mass. 552, 566, cert. denied sub nom. Crowder v. Massachusetts, 146 S. Ct. 169 (2025). "The officer's reasonable suspicion must be based on specific, articulable facts and inferences reasonably drawn therefrom." Crowder, supra.

Here, considering the "totality of the circumstances surrounding the patfrisk," Crowder, 495 Mass. at 566, it was

5

reasonable for the officers to suspect that the defendant was armed and dangerous. Centeio saw the defendant quickly reaching into the glove compartment, without being asked for his license or registration, and he continued to do so after he was asked to stop three or four times. The defendant also turned toward the passenger's side of the car and Mason "could not see where the defendant's hand went." "Movements of the vehicle's occupants that are 'suggestive of the occupant's retrieving or concealing' a weapon may objectively raise legitimate safety concerns." Commonwealth v. Atweri, 106 Mass. App. Ct. 578, 581 (2026), quoting Commonwealth v. Stampley, 437 Mass. 323, 327 (2002).

It was reasonable for the officers to believe that the defendant had a firearm because he was reaching in a "hurried manner," his hand was not visible, and he did not comply with the officers' commands to stop reaching in the glove compartment. See Commonwealth v. Goewey, 452 Mass. 399, 406-408 (2008) (defendant "reaching into the area around him" in car where hands could not be seen one fact justifying patfrisk). Contrast Commonwealth v. Torres-Pagan, 484 Mass. 34, 41 (2020) (no reasonable suspicion defendant was armed and dangerous when "[h]e made no furtive movements[,] his body was fully visible to the officers[, and] he was fully compliant with all commands issued by the officers").

6

Additionally, the motion judge found that after the defendant was removed from the car, a "struggle ensued" and the defendant "resisted police efforts to control his arms and hands." He also found that "Diaz had recovered weapons in the past many times from defendants who physically resisted police," and Mason had "recovered firearms when a person in a stopped car continued to move despite police demands to cease." Police "may rely on their training and experience as a basis for reasonable suspicion." Commonwealth v. Sweeting-Bailey, 488 Mass. 741, 746-747 (2021), cert. denied sub nom. Bailey-Sweeting v. Massachusetts, 143 S. Ct. 135 (2022). The officers' experience and the facts as found by the judge support his ultimate conclusion that there was reasonable suspicion to believe that the defendant may be armed and dangerous. See Sweeting-Bailey, supra.

2. The factual findings. The defendant contends that the motion judge based "his decision regarding the legality of the patfrisk on clearly erroneous factual findings about the conduct of the exit order." Specifically, he argues that it was erroneous for the judge to find that the defendant "tensed up and pulled his hands towards his body while still seated in the driver's seat." "A finding is clearly erroneous when there is no evidence to support it, or when, 'although there is evidence to support it, the reviewing court on the entire evidence is

7

left with the definite and firm conviction that a mistake has been committed.'"  Commonwealth v. Karen K., 491 Mass. 165, 169 (2023), quoting Custody of Eleanor, 414 Mass. 795, 799 (1993).

While Centeio's and Mason's testimony differed on what happened after Mason opened the driver's side car door, (see note 2, supra), the motion judge did not expressly rely on this testimony in concluding that the patfrisk was constitutionally permissible.  Cf. Commonwealth v. Hilton, 450 Mass. 173, 178-180 (2007) (suppression order vacated because it relied expressly on three erroneous subsidiary findings to support ultimate conclusion of involuntariness).  Rather, it was the defendant's "repeated refusals to stop reaching into the glove compartment and his turning or twisting his body so as to prevent officers from seeing his right hand" that supported the judge's appropriate conclusion.  Indeed, whether the defendant "tensed up" while he was in the car or after he was removed from it is inconsequential.  See Karen K., 491 Mass. at 174 n.5.

Judgments affirmed.

By the Court (Blake, C.J., Vuono & Neyman, JJ.[4]),

Clerk

Entered:  April 10, 2026.

---

[4] The panelists are listed in order of seniority.